OSMOND BAILEY, Plaintiff in Error,

*vs.*

DANIEL WELLS, Jr., Defendant in Error.

ERROR TO MILWAUKEE COUNTY COURT.

Where a lease contains a covenant on the part of the lessee to pay the rent, the lessee continues liable therefor, notwithstanding the fact that the lease may have been assigned, and the lessor may have accepted rent of the assignee.

A surrender is a yielding up of an estate for life or years, to him who has the immediate estate in reversion or remainder, wherein the estate for life or years may drown by mutual agreement.

A surrender of an estate for years cannot be proved by parol testimony, but must be evidenced by writing, or must be by operation of law.

When a new lease is taken from the lessor for the whole or a part of the term embraced in the former lease, there is a surrender by operation of law.

A surrender in fact can only be accomplished by some note or memorandum in writing, subscribed by the party surrendering the same.

This was an action of assumpsit, brought by Daniel Wells, Jr., against Osmond Bailey, on a parol lease, a copy of which is appended to the declaration. The declaration contains a special count on the lease, and also what is called the common counts. The special count sets forth, substantially, that on the 4th March, 1850, by a lease, in writing, between the plaintiff and the defendant, the plaintiff did demise and let unto the defendant, lot 1, in block 63, in the first ward of the city of Milwaukee, for the term of five years and nine months, from the 4th March, 1850, for fifty dollars per annum, in instalments of $12,50 at the end of each quarter; and that the defendant agreed to pay all taxes, and not to assign or underlet the premises without written consent of plaintiff, &c., and that " by virtue of which lease or instrument in writing,

the said defendant afterwards, &c., on the 4th March, 1850, entered into and upon said premises and became and was possessed thereof from the 4th day of March, 1850, until the 16th day of June, 1854. Averment that plaintiff hath performed and kept all things on his part to be kept and performed according to terms of the lease; and that $212,50 became due on the lease for rent, and that certain taxes on the premises became due and were not paid, and that the premises were sold for the taxes, &c., and there is an averment that the defendant neglected to pay the rent and taxes, &c., and also a general breach at the close of the common counts.

The defendant pleaded—1st, non-assumpsit; upon which issue was taken.

2. That before any action accrued to plaintiff, said plaintiff in writing, under his hand and seal, agreed and assented that the lease, &c., be transferred to Joseph Ackerell, and others ; and that said transfer was made and was accepted by the plaintiff, and that said Ackerell and others were then and there accepted and received by said plaintiff under said lease, in the place and stead of defendant, and the said defendant was then and there acquitted, released and discharged by the said plaintiff from any and all further liability accruing from or under said lease, and concludes with a verification. The plaintiff replied to this second plea substantially: " That he, the plaintiff, had never accepted or received the said Ackerell, and others, to whom it is alleged in the said plea of the said defendant, that the said lease, mentioned in said declaration, was transferred and assigned as tenants of the said plaintiff in the place and stead of the said defendant; nor in any manner, or at any time acquitted, released or discharged the said defendant of or from any liability, promise or undertaking, in or under said lease. Concludes to the country. Issue.

3. *Actio non.* Because after the making of the lease and entry upon the premises, and before any rents became due,

the said defendant did then and there surrender the said lease and the premises unto the plaintiff, who did accept and receive the same of and from the defendant, in full cancellation, release and discharge of the said lease as between said plaintiff and said defendant, and in full satisfaction and discharge of any supposed indebtedness accruing or to accrue, &c. Concludes with verification. Replication to 3d plea. Ought not to be barred because *protestando*, &c. The plaintiff says that he hath never accepted or received a surrender of the said lease, or of the said demised premises, or any part thereof, in full cancellation, release and discharge of said lease, as between said plaintiff and defendant, as alleged in said plea. Concludes to the country. Issue.

4. In this plea a general release in writing, under seal, of all actions and causes of actions is pleaded. Replication. The substance of the plea is traversed. Conclusion to the country. Issue.

5. To 1st count; *actio non*. Because defendant says that after making of the said lease, and the promises in the 1st count, the said defendant, with the full knowledge, approbation and consent of the said plaintiff, transferred the said lease to one George Southwell, Sen., and others named in said transfer; and that said assignment and transfer were duly assented to in writing by the plaintiff; and that said assignees were then and there accepted and received by said plaintiff, as the tenants of the said plaintiff, in the place and stead of said defendant; and in full discharge and release of said defendant in the premises; concludes with a verification.

Replication. *Protestando, &c.* Yet for replication he says that the said George Southwell, Sen., and others mentioned in said plea were not accepted and received by plaintiff as the tenants of the plaintiff in the place and stead of the defendant, in discharge and release of defendant from his

obligations to plaintiff under the lease. Concludes to the country. Issue.

6. Payment. Replication, and issue.

The plaintiff read in evidence to the jury the parol lease declared on, which among other things contains this provision, to wit: "And the said party of the first part does covenant that the said party of the second part, on paying the said yearly rent, and performing the covenants aforesaid, shall and may peaceably and quietly, have, hold and enjoy the said demised premises for the term aforesaid." And the plaintiff also read in evidence certain certificates of redemption from tax sales, and there rested his case. Whereupon the defendant moved for a non-suit. 1st, "Because the plaintiff has not shown by testimony that the defendant ever had possession, or that he ever occupied the premises described in the lease, or that possession was ever offered or tendered to the defendant. 2nd, Because the testimony produced to the jury is not sufficient to authorize a verdict in the plaintiff's favor. 3d, Because the material averments in the plaintiff's declaration are not proved." The court overruled said motion. The defendant excepted. The defendant then read the deposition of Wm. A. Tucker. To which deposition there was appended a duplicate of the lease declared on, on which lease there were certain indorsements which were also read in evidence, as follows, to wit: "Upon the condition that the assignees hereafter named, keep and observe and perform all the covenants and agreements herein contained, and that they do not assign, underlet, or in any manner part with this lease, or any part of the demised premises; I hereby consent that the within lessee, Osmond Bailey may assign over the within lease to George Southwell, Benjamin Ackerell, Newton Whitman, and Wm. A. Tucker. Given under my hand and seal, this 27th day of March, A. D. 1850.

DANIEL WELLS, Jr.

By C. K. Wells.

Bailey vs. Wells.

June 5th, 1850.    Received on the within, twelve 50-100 dollars.    W. A. Tucker.                    12,50
                                                D. Wells, Jr.

Sept. 10th, 1850.    Received on the within twelve 50-100 dollars.                                    12,50
                                                D. Wells, Jr.

" For value received, we, the undersigned, hereby sell and assign the within lease to George E. H. Day, and convey all the property therein to him.

" Attest: W. H. Byron,              Benj. Ackerell
            John McCullough.          Wm. A. Tucker,
    Dec. 3d, 1850.                    George Southwell."

Also appended to said lease, annexed to said deposition, is an assignment of said lease from Osmond Bailey to George Southwell, Benjamin Ackerell, Newton Whitman and William A. Tucker, as lessees and trustees of the Wesleyan church, &c., which assignment is under seal and duly acknowledged, and bears date March 27, 1850. All of which were read in evidence. Which deposition among other things things stated, that " Wells gave his assent to the assignment, and accepted us as his tenants, from and after the date of the assignment, and looked to us for rent from and after the assignment."

[There were several matters of evidence claimed to have been in evidence, which were incorporated in the "case" with reference to the record, but which were excluded by the judge in settling the exceptions, and which were urged on the argument, but which are, of course, excluded here; as well as some other matters not particularly bearing upon the points decided.]

And before closing the testimony on his part, the defendant offered to prove " that while Southwell, Tucker and others, were in possession of the premises, Wells made a verbal

agreement, substantially, that in consideration that they, Southwell, Tucker and others, would quit the premises, and allow Geo. E. H. Day to take possession thereof, he, Wells, released them, Southwell, Tucker and others, and accepted Day as his tenant, and that said agreement was carried out by letting Day into the premises, and by their, Southwell, Tucker and others, quitting the same."

And the court ruled out the proof of said points. The defendant excepted. The defendant then read in evidence a receipt signed by the plaintiff, as follows, to wit:

" Received of Osmond Bailey twelve dollars and fifty cents, in consideration of releasing him from liabilities upon a lease, dated Dec. 4, 1848, and of granting him the privilege of leasing the premises described in said lease from March 4, 1850.

" DANIEL WELLS, Jr.,

" March 13, 1850.              By CHARLES K. WELLS."

And the defendant offered and read in evidence, a general warranty deed from Daniel Wells, Jr., to James Davlin, of the premises described in the lease sued on, dated the first day of October, 1852.

There was some rebutting evidence introduced by the plaintiff, but it is not considered material to the consideration of the legal points in the case.

The defendant requested the court to instruct the jury:

1. " That the plaintiff has not made out by testimony such a case as entitles him to a verdict against the defendant."

2. " That, if the jury are satisfied from the testimony, that the plaintiff did accept and receive Ackerell, and others, as his tenants, as alleged in his, the defendant's second plea, then the finding of the issue under that plea should be in favor of the defendant, and if Wells, the plaintiff, received rent of Ackerell, Tucker and others, or of either of them, this is evidence tending to show that they were regarded by Wells as his tenants, in the place and stead of Bailey."

3. "That, if the jury are satisfied from the testimony, that Southwell and others, the assignees of the lease, paid rent to Wells after such assignment, that is evidence of privity of contract between Wells and such assignees, and such assignees are the persons to whom Wells should look for his rent."

4. "That the legal effect, import and construction of the written consent, indorsed on the lease and signed by the plaintiff, are to authorize Bailey to assign the lease to Southwell, Ackerell, Whitman and Tucker, and to make them the tenants of Wells, in lieu of Bailey, and to release Bailey from liability to pay rent from that time."

. 5. "That the written consent of the plaintiff that the. defendant assign the lease sued on to Southwell and others, being under seal, imports a consideration, and the effect of such consent and the assignment of the lease, is to substitute Southwell and others the assignees to the right of Bailey."

6. "That, if the jury are satisfied from the acts and conduct of Wells, as shown in evidence, and from the whole testimony in the case, that Wells and Bailey made the arrangement to have Southwell and others take Bailey's place as the tenants of Wells, and assume the payment of the rent, and that Bailey should be let off or be released from future liability, then Bailey from that time is exonerated from liability.·

7. "That the instrument or lease declared on is a simple or parol contract, and it was competent for the parties thereto to enter into any subsequent arrangement in reference to the subject matter of said lease, and to abrogate or change the same as they pleased.

8. That, "If it be established to the satisfaction of the jury that Wells, in his own person, or by his agent consented to the assignment of the lease to George E. H. Day, without consulting Bailey and obtaining his consent, then after such assignment Bailey is not liable under the lease to the plaintiff for the accruing rents or taxes.

9. That, " If it is established that Wells the plaintiff accepted Geo. E. H. Day as his tenant on the premises, then from that time Bailey is no longer liable for rents or taxes.

10. " That, if the jury are satisfied from the testimony, that the lease was assigned and delivered over to Day at the instance and request of Wells, the plaintiff, that in law is such a surrender of the lease and premises, as discharges Bailey from liability thereon from that time."

11. " That, if the jury are satisfied from the testimony, that Day was put into possession of the premises, described in the lease, by Wells, then from that time Bailey is no longer liable on the lease for the accruing rents or taxes."

12. " That if it is established to the satisfaction of the jury, that the plaintiff conveyed the premises, described in the lease, to J. Davlin, exercising possession over said premises to the exclusion of those holding under the lease, that it is a virtual abrogation of the lease, and from that time such person or persons, so holding and being ousted, would not be liable to pay rent."

The defendant further requested the court to instruct the jury :

13. " That, if it is established satisfactorily, that before and at the time of the making of the lease, by Wells to Bailey, there was a prior outstanding unexpired lease of the premises, executed by Wells to Ackerell, Tucker and others, and that before and at the time of the lease to Bailey, such persons or any of them, were in possession of said premises, to the exclusionof Bailey, and that Bailey did not and could not obtain and have peaceable possession of said premises, by reason of such outstanding and unexpired lease, and by reason of such persons being in and continuing to hold possession of said premises, then the jury are to find for the defendant."

14. That, " If the jury are satisfied from the testimony, that Wells did accept and receive Ackerell and others as his

tenants in lieu and in place of Bailey, the verdict should be for the defendant, and the jury are instructed that the acts of Wells, his receiving rent of other persons, his declarations and all of his conduct connected with the transaction as shown by the testimony, are proper evidence, for the jury in coming to a conclusion as to what the arrangement was.

15. That, " If the jury are satisfied that Wells had an understanding with Tucker, Ackerell and others, that Day should come in and occupy the premises described in the lease, and that a verbal arrangement was made by and between Wells and Tucker to that effect, and that such verbal arrangement was made without consulting Bailey, and that such understanding was carried out and executed; then from the time of such arrangement Bailey was discharged and released from liabilities from any and all rents and taxes accruing after such arrangement. Because such arrangement, acts, interference, &c., on the part of Wells, if Bailey ever had posession, and he should see fit to avail himself of them constitute a recision of the contract, or a surrender of the premises by operation of law."

To each and every of which requests the judge refused, and to which ruling the defendant severally excepted.

The judge further charged the jury in general upon the law of the case and upon the evidence, to which exceptions were taken, but the foregoing covers the whole case.

The jury returned a verdict as follows : "We, the jury, find for the plaintiff, and assess the damages at one hundred and ninety-seven dollars and thirty-one cents."

Whereupon the defendant moved in arrest of judgment, because the verdict is not responsive to the several issues, and for other errors on the face of the record. The motion was overruled, and judgment entered on the verdict. On which error is assigned, as will appear herein.

*Lakin & Steever*, for the plaintiff in error.

1. To make out a *prima facia* case, under the contract declared on and under the averments in the declaration, it was necessary for the plaintiff to introduce some testimony to show (as the plaintiff has averred in the declaration,) that the defendant entered upon and occupied the premises for some specified time. No such evidence was introduced, and the court should have non-suited the plaintiff. (Bac. Ab., 5 vol., 631 page, Leases M.) The lease declared on is a simple or parol contract between Wells and Bailey, and not a sealed instrument. One clause in the contract requires that Bailey "shall and may peaceably and quietly have and enjoy the said demised premises for the term aforesaid." It was necessary for the plaintiff to declare and prove on the trial, that he had performed, or tendered performance of all that the contract required of him. Among the things required by the contract, of the plaintiff, was to give Bailey possession of the premises. The *possession*, and not the mere *promise* of it, or the right to sue for it, was the actual consideration for which Bailey agreed to pay. Could the action accrue to the plaintiff without his giving, or offering to give, the defendant possession? The pleader considered that it was necessary for him to *aver* this, but the court decides that he need not prove it.

2. The 8th, 9th, 10th, 11th and 12th instructions asked for by defendant below, should have been given to the jury; but the court negatived each and all of them.

3. The 13th instruction is framed under the testimony. It goes to the consideration of the contract, and is based upon the sound position, that if the plaintiff below leased the defendant's premises which he had no control over, or if the plaintiff kept the defendant out of possession, then he is not entitled to the money which the defendant promised him for that possession. But the court ruled out that instruction.

Bailey vs. Wells.

4. Under the 5th plea the issue is made, whether or not, Southwell and others were accepted and received by the plaintiff, as the tenants of the plaintiff, in the place and stead of Bailey. The 14th instruction is framed with direct reference to that issue. But the court ruled it out.

The judge of his own motion, charged the jury as a matter of law, "that it does not appear, from anything in the evidence, that Wells ever released Bailey from liability for the rents and taxes under the lease; nor does the fact which has been proved, that Wells received rent from the assignees, release Bailey from liability." In this the court assumes the untenable position, that the simple contract, without possession being given, gives the right of action. And then, in effect, charges that there is nothing in the evidence that shows or tends to show that Bailey was released or that the contract was rescinded. The judge also charged the jury, that there is no evidence of such a surrender as the law requires; "that offer having been excluded" under the Statute of Frauds. The court says that "*the surrender should have been in writing.*" Let us see if it was not in writing, and of equal dignity with the said *parol* lease, which seems not to have been distinguished from a *deed* or *sealed* instrument.

A few days after the date of the lease to Bailey, we find an instrument *under seal,* signed by Daniel Wells, in which, upon good consideration, which is implied, he selects the old tenants which he has had in possession of the premises for several years, and consents that the lease be assigned to them; and on the same day, by deed sealed, witnessed and acknowledged before a notary, we find the assignment in *writing* from Bailey, to the said tenants of Wells, who had been in possession several years under a written lease, and whose term was unexpired, and whose lease had never been surrendered in *writing* or *otherwise.*

A surrender to the tenants of Wells, pursuant to his sealed

instrument, is, in law, a surrender to him.   There are two
sealed instruments, disposing of the said dignified lease,
(which never had any vitality, by reason of the other out-
standing lease, and by reason of Wells being in possession,
by his tenants, to the exclusion of Bailey.)   But the court
says that there is *no evidence* before the jury of a surrender.
There is also much parol testimony to show that Bailey was
altogether disconnected from the transaction, and was not held
liable by Wells.

But, independant of any and all writing, even the *" Statute
of Frauds,"* to which the court adheres with such tenacity,
although the parties have made no mention of the same in
their pleadings, recognizes a *" surrender by operation of law."*
Certain *acts* may be done which work a surrender.   The law
says they amount to a surrender; a given act being done, a
surrender follows, is implied—the party is estopped from de-
nying it.   For example : A, in writing, leases to B a house
for a term of years; B takes possession, and the same day
they change their plans and they mutually agree to abrogate
the lease, and B publicly gives up possession to A and
retires.   At the end of said term A sues B for the rent speci-
fied in the lease; B pleads the verbal agreement to abrogate
the lease—that possession was given; the agreement carried
out and executed.   Although this agreement, if *executory,*
could not be enforced, yet, if executed, it must have effect.
The acts of the parties *imply* a surrender; A having accepted
and occupied the premises, is estopped from setting up the
*invalidity* of the surrender.   (Smith's Leading Cases ; Hare
& Wallace's Notes, 2d vol., 459, marginal page, and authori-
ties cited.)   29 E. C. L.   *Nickells vs. Atherstone,* 10 Queen's
Bench, 944, vol. 59 E. C. L.; *Thomas vs. Cook,* 2 Starkie, 408,
(3d vol. E. C. L.;)   *Stone vs. Whiting,* 2 Starkie, (3d vol. E.
C. L.) *Reeve vs. Bird,* 1 Crampton Meesan & Roscoe, 31, 2
Scam., 220, 1 Parsons on Cont, 428, § 4.

*O. H. Waldo,* for the defendant in error.

This was an action by the lessor against his lessee to recover damages for amount of rent and taxes unpaid on a written lease of a parcel of land, for a term of five years and nine months from the fourth day of March, 1850, executed by both lessor and lessee, and *containing an express contract and agreement* on the part of the lessee, *to pay such rent and taxes.*

The defence of the plaintiff in error (so far as we can gather it from his positions in the court below) is threefold, to-wit:

1. That the assent, express and implied, of the lessor, to the assignment of the lease sued on, amounts in law to a release of the lessee from his obligation to pay rent.

2. That the lessor ought not to recover, because the lessee proposed to prove an oral surrender of the leased premises to the lessor.

3. That the lessor ought not to recover, because he did not prove that he gave possession of the premises to the lessee.

In all cases of assignment of leased premises, without consent of the lessor, express or implied, the lessor may look for his rent either to the lessee or to the assignee, at his option, or to both in turn. This privilege of election arises (in case there be no express covenant) from the privity of estate—the duty of the lessee is simply *implied* in law. If there be no express covenant or promise to pay, then consent, express or implied, will waive the implied duty or covenant of the lessee to pay rent.

But where, in a lease or agreement in two parts, executed both by the lessor and lessee, there is an *express undertaking,* on the part of the lessee, to pay rent, or to do any other thing to the advantage of the lessor, there the consent of the lessor to the assignment, whether express or implied, is, of itself, no waiver of the express contract of the lessee, and after assignment with such consent, the liability of the lessee to pay

(resting in this case on privity of contract and not upon the privity of estate) remains unchanged. Comyn's Landlord and Tenant, (Law Library) p. 154; *Fletcher vs. McFarlin,* 12 Mas., (Ting's R.) 43; 1 Chitty Pl., 36 . Taylor's L and. T., 212; *Dewey vs. Dupuy,* 2 Watts & Sergeant's R., 553; *Jackson vs. Brownson,* 7 John, 227; 4 Term R., 94, 98, 99, 100; 1 Term R. 93; 10 East., 313; 17 J. R., 239; 14 Wend., 64.

It is believed that the current of authority indicated by the cases cited above is uniform. And while the decisions have generally occurred in actions of covenant arising on sealed instruments, they are believed to have the full force of authority in the present case, which is also an action or an express contract. The action of debt may not lie against the lessee for rent, after assignment with assent of lessor, since the right to maintain that action grows directly out of the possession, and the assent of the lessor may have annulled the implied obligation to pay, which rested on the privity of estate, but all the authorities are uniform, that, where there is, in the lease, an express undertaking to pay, covenant will lie as well after assignment and acceptance of the assignee by the lessor, as before. The distinction here is, obviously, not between the forms of the actions of debt and covenant, in any other respect, but between the right of the lessor against the lessee on his implied obligation, arising out of the relation of the parties as landlord and tenant, and his right on an express covenant to pay,—the lessor not losing the benefit and security of such an express promise or undertaking unless he does so voluntarily and expressly.

If there could be any doubt, in an ordinary case of simple assent to the assignment, as to whether that was intended to embrace or imply an agreement to look solely to the assignee for rent, and to discharge the lessee; that doubt could not arise in this case, from the framing of the assent, being conditional, &c.

The restriction upon assignments without consent of lessor is a privilege reserved to the lessor. When consent is given to one assignment, that privilege is forever waived and gone, and no assent is necessary to any subsequent assignment. 1 Smith's leading cases, 85, (2 Coke, 119,) and many authorities therein cited.

Therefore all the testimony given or offered, respecting the assent of Wells to the assignment by the trustees, to Day, is immaterial and irrelevant, and the instructions to jury asked upon these points were rightly ruled out.

As to the surrender: "No estate or interest in lands other than leases for a term not exceeding one year, &c.—shall be created, granted, assigned, surrendered or declared, unless by act or operation of law, or by deed or conveyance in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same," &c. R. S., chap. 75, § 6.

"Every contract for the leasing for a longer period than one year, &c., shall be void, unless the contract, or some note or memorandum thereof, expressing the consideration, be in writing," &c. R. S., chap. 75, § 8.

If the term do not exceed one year, it may be created by, and rest in mere parol agreement, and such a term and the oral lease creating it, may be assigned, surrendered or cancelled and a new tenant substituted by a like parol agreement.

If there be a valid lease for a term longer than one year, at any time after the beginning of the last year, when the remnant is so short as to come within the limit of the statute of frauds, it may be surrendered, assigned or cancelled and a new tenant substituted by parol.

But if there be an existing unexpired term longer than one year, as the same could not be created or granted, so neither can it be assigned or surrendered unless by act or operation of law, or by writing, &c., subscribed by the party assigning or surrendering. R. S. (cited above) page 388, §§

6 and 8 ; Taylor L. and T. p. 66, 67 and 68, § 512, 6 Wend., 569 ; *Rowan vs. Lytle*, 11 Wend., 617, &c.; *Schieffelin vs. Carpenter*, 15 Wend., 400 ; *Smith vs. Niver*, 2 Barb., S. C., 181 ; Comyn's Landlord and T., 275, 342 ; 2 Coke on Litt., 551 ; 4 Cruise, 155 ; 4 Bacon Abr., 209, 210 ; 2 Starkie, Ev., 590 ; 4 Term R. 98, 100 ; 3 Burr, 1807, 1980, 2010 ; 6 East., 661 ; 1 Saund., 236 ; 2 Saund., 241 ; Woodfall L. and T., 278 ; 4 Barn., and Cress., 922.

The surrender by act or operation of law occurs when the lessor gives a new lease, either to the same lessee, or to some third person, and it is accepted during the unexpired term, but to operate as a surrender, such new lease must be valid in law to create the term proposed in it. It must not be a nullity, as a parol lease for more than one year would be. *Schieffelin vs. Carpenter*, 15 Wend., 407.

Any arrangement, by Wells and his lessee, and the assignees, by which the latter were to enter the premises, must, in the nature of things, have been in substance either an assignment with consent, or a surrender. It could be nothing else.

*By the Court*, COLE, J. Probably the various grounds of defence interposed by the plaintiff in error, in the court below, really resolve themselves into the positions stated in the brief of the counsel for the defendant in error, and we therefore think that we shall sufficiently dispose of all the questions in the case necessary to be noticed, in considering those propositions.

The positions are stated as follows :

1. That the assent, express or implied, of the lessor, to the assignment of the lease sued on, amounts in law to a release of the lessee from his obligation to pay rent.

2. That the lessor ought not to recover because the lessee proposed to prove an oral surrender of the leased premises to the lessor.

3. That the lessor ought not to recover because he did not prove that he gave possession of the premises to the lessee.

The action was brought to recover rent due upon a written lease, made and executed by Wells on the 4th day of March, 1850, by which he demised certain premises in Milwaukee to Bailey, for the term of five years and nine months. Bailey promised and agreed in the lease to pay the rent, according to the terms therein mentioned, and also not to underlet the premises, or assign the lease, without the written consent of the lessor. Shortly after the execution of the lease, Bailey assigned to the trustees of a religious society, who again assigned to one Day. Wells gave his consent, indorsed upon the lease, to the assignment by Bailey, to the trustees, Southwell and others, and the testimony showed that he had received rent at different times from the assignees.

It is now insisted, among other things, that the assent of Wells to the assignment of the lease to the trustees, Southwell and others, and the acceptance and receipt of rent from the assignees, in legal contemplation, was equivalent to his constituting them his real and only tenants, and exonerated Bailey from all liability, further to pay rent. This position we consider untenable.

The authorities are clear that where the lease contains a covenant to pay the rent, the lessee continues liable therefor, notwithstanding the fact that the lease may have been assigned, and the lessor may have accepted rent of the assignee. This doctrine is founded upon the principle that the lessee having contracted or agreed to pay the rent, he is not released from his obligation, though the lease happens to have been assigned. *Fletcher vs. McFarlin*, 12 Mass. R., 43 ; *Post vs. Jackson*, 17, J. R., 238 ; *Walton vs. Crowly*, 14 Wendall, R. 64, and cases there cited. In the present case, Bailey, for a good and valuable consideration, entered into an agreement to pay the rent which might become due upon the lease, and

he is bound by this agreement, though the lease may have been assigned and the lessor may have assented to the assignment, and received rent from the assignee. It was undoubtedly competent for the lessor to relieve him from this obligation, but it does not appear that he has done so. The law, therefore, cannot relieve him from the nature and extent of the contract which he has made.

Further let us inquire whether there is any ground for saying that there had been a legal surrender of the lease. A surrender is said to be a yielding up of an estate for life, or years, to him who has the immediate estate in reversion, or remainder, wherein the estate for life, or years, may drown by mutual agreement. Woodfall, L. & T. 205; Taylor, L. & T. § 507; *Schieffelin vs. Carpenter, et al.,* 15 Wend., 400. This was a lease for years, and it was proposed to show, by parol testimony, that there had, in fact, been an express surrender of the estate to the lessor. This evidence was incompetent, and was directly in violation of the statute of frauds. Section 6, Chap. 75, R. S., declares that " no estate or interest in lands, other than leases for a term not exceeding one year, nor any trust or power over or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, *surrendered,* or declared, unless by act or operation of law, or by deed or conveyance in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same, or by his lawful agent thereunto authorized by writing." When a new lease of the premises is taken from the lessor, for the whole or a part of the term embraced in the former one, there is said to be a surrender in law, because the giving a new lease necessarily implies a surrender of the old one. Now there are no circumstances in this case which will authorize the presumption that there has been a surrender by operation of law. And if there has been any surrender in fact, it could only be done by some note or memoran-

dum in writing, subscribed by the party surrendering the same. It is not pretended that any such surrender was made, or that any such writing exists. The circuit court, therefore, very properly refused to permit the plaintiff in error to show an oral surrender of the leased premises to the lessor.

Upon the last point in the case we only deem it necessary to observe that it satisfactorily appears from the evidence, that the trustees of the religious society were in possession of the demised premises at the time the lease was executed to Bailey, and that he was fully aware of this fact, having been connected with the church, and having previously been one of the trustees. After he obtained the lease, he endeavored to get possession of the premises, notified the trustees to quit, and continued his efforts until he was threatened with a suit in chancery by them. Then it seems he abandoned all idea of evicting the trustees, and assigned his lease to them. There is, therefore, no reason for saying that the plaintiff in error, or which amounted to the same thing, his assigns, were not let into possession of the demised premises.

The result at which we have arrived is, that the judgment of the circuit court must be affirmed.