## WILLIAMS v. NICHOL.

1. JURISDICTION: *Lex rei situs.*

The law of the *situs* of immovable property governs exclusively as to all rights, interests and title in and to the property, and as to the capacity or incapacity of a testator, and the extent of his power to dispose of it, and the descent and heirship thereof, and the manner of its disposal for the payment of debts.

2. SAME: *As to legacies charged upon lands.*

Courts of equity in the state in which lands are situated have exclusive jurisdiction as to legacies charged upon them.

3. WILLS: *Legacy charged upon lands.*

The acceptance of a devise of land renders the devisee personally liable for a legacy charged upon the land.

4. TRUSTEES: *When removable by chancery.*

Courts of equity have power to remove trustees for neglect or breach of duty, but will not remove them for every mistake or neglect of duty, but for such only as endanger the trust property, or show a want of honesty or capacity to execute their duties, or a want of reasonable fidelity.

5. SAME: *Removal for insolvency.*

A trustee appointed by a testator will not be removed for insolvency, nor required to give bond, when the testator has not required a bond and the bill does not show that he is less solvent than when he was appointed.

APPEAL from *Jefferson* Circuit Court in Chancery.
Hon. JOHN A. WILLIAMS, Circuit Judge.

*Sol. F. Clark, Sam. W. Williams* and *Met. L. Jones* for Appellants.

There was no jurisdiction in the court below, neither over the subject nor the parties, and if the court did have jurisdic-

tion there was no equity in the bill. The will was made in Tennessee, and the testator domiciled there. The estate was domiciled in Tennessee and was being administered there. No debts are shown to be due in this state, to necessitate an ancillary administration. Had there been our courts would have control for the purpose of payment of such debts, but not for the payment of foreign debts or legacies. *34 Ark., 117, 132.* The fact that the legacy was secured by a lien on lands in Arkansas, did not give the court here control of the legacy. The legacy was a personal gift, and was properly a subject of administration in Tennessee. The administration was not closed. The debts had not been paid, and suits were pending. The jurisdiction of the domicile was exclusive. *3 Redf. on Wills, p. 20, sec. 2; 1 Williams on Ex., 264; 4 Johns. Ch., 460; 3 Redf. on Wills, pp. 75–6, sec. 6, par. 22; 2 Barb. Ch., 381.*

But the trustee had been guilty of no dereliction of duty. He had received none of the legacy, and he and McH. Williams, as executors, were authorized to hold the legacy until the estate was settled. *2 Redf. on Wills, pp. 465, 477, sec. 32; Ib., sec. 31; Ib., sec. 30.*

The legacy could not be paid until it was ascertained the estate was solvent, which was a matter exclusively for the Tennessee courts. *27 Ark., 482; 3 Mass., 513; 11 Id., 256; 9 Id., 337; 16 Ark., 257.*

The court erred in removing the trustee. It had no discretion to remove the appointee under the will, except when the appointee dies, or refuses or neglects to serve, or is incapable or dishonest, etc. *5 Paige, 46; 8 Id., 295; 2 Hen. & Mun., 12; 6 Ala., 75; 2 Sandf. Ch., 336; 2 Barb. Ch., 381; Hill on Trustees, marg. p. 181, note 3.*

Insolvency was no cause of removal, nor the failure to give bond. He was no more insolvent than when appointed, nor did the will require him to give bond; on the contrary, expressly dispenses with it. The want of a bond, unless where

the statute requires it, was never a cause of removal. *9 Barr, 416; 2 Hen. & Mun., 11.*

The loan to Neel seems to be a judicious one, in accordance with the will.

· John H. Williams was not entitled to the $12,000, and was not in default previous to the settlement of the estate by the executors. *14 Ark., 149; 16 Id., 154; 17 Id., 113.*

*U. M. & G. B. Rose* and *N. T. White* for Appellee.

While insolvency is not always a ground of removal, it is in many instances. *Fieldeman Real Prop., sec. 509.*

His removal was a matter of discretion with the court. See *101 Mass., 239; 118 Id., 217; 96 U. S., 419; 41 N. Y., 122.* Where the trustee is insolvent, and it appears that money will come to his hands, and he is proved to be negligent, he will be removed. *3 McCrary, 161.* Or he may be required to give bond. *29 Hun., 271.* It is a matter of discretion. *81 N. C., 233; Hill on Trustees, 191; 6 How. Pr., 216.*

The court had jurisdiction. Even if a suit for the same purpose had been pending in Tennessee, it would neither have hindered or delayed this suit. *118 Mass., 217.* As it was to enforce a charge against lands in this state it could only be brought here. *27 Ark., 482; 9 Wall., 23; Green v. Byrne, 46 Ark.* As the appellee and her trustee differed as to the construction of the will, she had a right to file a bill to have the will construed. *38 Ark., 439.*

The Neel mortgage was not before the court. After the commencement of the suit the trustee could do nothing in regard to the trust, save what might be necessary to protect the trust fund, without the order of court. *3 Hare, 245; 1 Beavan, 468.*

The appellants are not injured by the decree of the court below. McH. Williams asserts that the Neel mortgage is an

ample security for the fund.    The transaction not having been approved by the court, he will be in a position to enforce the security for his own benefit, as on a proper application to a court of chancery he will be subrogated to the rights of the mortgagee.    *Waggoner v. Lyles*, 29 *Ark.*, 7; *Valle v. Fleming*, 29 *Mo.*, 152; *Johnson v. Robertson*, 34 *Md.*, 165; *Payne v. Hathaway*, 3 *Vt.*, 212; *Howard v. North*, 5 *Texas*, 291; *Sellect v. Phelps*, 11 *Wis.*, 380; *Tompkins v. Sprout*, 55 *Cal.*, 31; *Mc-Laughlin v. McDaniel*, 8 *Dana*, 183.

BATTLE, J.    Willoughby Williams died, at his late residence in the State of Tennessee, on the 8th day of December, 1882, leaving a last will and testament, which was duly admitted to probate, in the State of Tennessee, and in the county of Jefferson in this state.    He devised by his will, to his son, McH. Williams, his plantation in Jefferson county, Arkansas, known as the " Bankhead Place," and charged it with legacies to his children and grandchildren, as follows:    He directed McH. Williams to pay to his son John H. Williams, as trustee for his daughter Nannie W. Nichol (the plaintiff), wife of C. A. Nichol, the sum of $12,000, in four annual instalments from the date of the testator's death, with six per cent interest on the same from that date; and the said John H. Williams was appointed trustee for the said daughter.    Second, to pay to the children of the testator's son, Robert N. Williams, the following sums, to-wit:    To Jennie Williams $1000, to Morgan Williams $1000, and to the two younger children of said Robert $2000 each upon their arriving at twenty-one years of age.    Such legacies were to bear interest from the death of the testator at six per cent.    The will then proceeds:

" I wish my son John H. Williams to accept the position of trustee for my daughter, Nannie W. Nichol; to receive the $12,000 and interest from my son McH. Williams, and invest it in a home for her when *she and the said John H.* may deem it

16———47

best for her interest, or to invest the same in some good, well-secured, interest-paying first mortgage bonds; and the said legacy of $12,000, and whatever property it may be invested in and all the profits and interest thereon, are to be received by the said John H. Williams and held for her sole and separate use, and to be absolutely free from all the debts, contracts and liabilities of her husband, C. A. Nichol, or any future husband she may hereafter have; the said interest and profits to be paid to her for that purpose by my son John H. Williams, as received by him."

In another clause of the will the testator bequeathed 30,000, out of 40,000 shares which he held, of the stock of the Memphis and Hopefield Real Estate Company, and directed it to be divided by his executors between his daughters, Mary Jane McNairy, Ellen W. Lewis, and Nannie W. Nichol (the plaintiff), share and share alike. The portion given to plaintiff, or the proceeds of any sale thereof, to be held by said John H. Williams as her trustee, in the same manner and with the *same power of disposition* as directed in regard to the legacy of the $12,000; and in still another, the seventh clause, he devises his Memphis and Fort Pickering property, and *any residuum of property of which* he might die seized, to be sold by his executors, and the proceeds, after paying debts, to be equally divided between his children, and the share going to the plaintiff he directs to be held in trust by the said trustee, John H. Williams, in the same manner as the other bequests to her.

John H. Williams and McH. Williams were nominated executors of the will, and after the death of the testator qualified as such.

Mrs. Nannie W. Nichol commenced this action, in the Jefferson circuit court, against John H. and McH. Williams, as executors, and in their own rights, and the other legatees and devisees named in the will. After setting out the foregoing facts in her complaint, she alleges that the property mentioned

in the seventh clause of the will has been sold as directed, *the debts all paid*, and each of the legatees mentioned in the seventh clause of the will have been paid their share of such proceeds, but that no part of the proceeds have been paid to the plaintiff, nor has she received anything on account of any bequest of the will; said John H. Williams declaring that nothing, by the terms of the will, is to be paid to her, but that all the moneys that came to his hands, as trustee, under said will, are to be held by him for re-investment, and that he is not authorized to pay to the plaintiff the interest accruing on the fund set apart in said will for her use and benefit.

She alleges that said trustee has never taken any steps to collect any part of said money, except by the sale of the property mentioned in the seventh item. That he has utterly neglected to take any steps towards carrying out the trusts devolved upon him, though often requested to do so, and that he has been acting as such trustee, and received money as such, without having given bond or other security; and that he is wholly insolvent.

She prays that the will may be construed; that all its trusts for the benefit of the plaintiff may be enforced against said land and other property, and against the trustee and the executors; and that if the court should be of opinion that any investment should be needed for the benefit of the plaintiff, under the provisions of the will, *the court may proceed to have the same made under its own order and direction for the protection of the plaintiff.* That the court may cause the *interest* and the *increase* that may be due *to the plaintiff* under the will to be paid to her. That an account might be taken of whatever money or property she was entitled to under the will, and that all of her rights thereunder might be accurately settled and defined. That said trustee, Williams, might be removed, and another trustee appointed to act in his stead.

The defendant, John H. Williams, in his own right, demurred to the complaint, because the court did not have jurisdiction, and because it did not state facts sufficient to constitute a cause of action; which was overruled.

McH. Williams, in his own right and as executor, filed an answer. He admits the will and its probate, as alleged. Says, in substance, that he was one of the executors appointed under the will and a beneficiary; that he is advised that the estate or interest going to the plaintiff under the will, was given to the defendant, John H. Williams, in trust, to be collected and invested for her by defendant as trustee; and that there was no estate cast upon her by the will, except through the intervention of such trustee and in the manner set out in the will, and that there is no power to set aside or adjust the will so as to avoid the terms and limitations of it as a devise. Defendant also says, that two years had not elapsed after the death of the testator to the commencement of this suit, and he is advised that two years, under the laws of Tennessee, must elapse before suit can be brought to cause the executors to account. Alleges that the claimant in the present case is a nonresident of Tennessee, and that there are other resident claimants against the estate, to wit, Logan H. Roots, and others, and they are entitled to five years to settle and adjust their claims before any equitable proceedings, except in the probate court of Tennessee, can be tried. Says that Lehman, Abraham & Co., of New Orleans, has a claim of $7000 which has been duly presented and refused, and suit upon the same in the courts at Nashville, Tennessee, is now pending, and which can not be adjusted or settled for the present. Says that the Hopefield stock at Memphis, mentioned in the will, has not been, and cannot now be disposed of, but still exists as part of the trust, and the courts of Tennessee, at Nashville, are the proper courts to settle all the questions mentioned or shown in this action. That application upon all claims or legacies should be first made to the forum of the domicile. That there are other lega-

cies charged on the lands mentioned in this suit, in favor of the minor children of Robert N. Williams and his widow and heirs. That he should be protected, and the trust estate so adjusted as to protect them and himself. That he brings into court all sums due plaintiff and asks the protection of the court.

Afterwards McH. Williams filed a supplemental answer, in which he, in substance, states:

That since his former and original answer he has paid to John H. Williams, the trustee named in the will, as declared in the pleadings in this case, not being restrained by the court, the money charged against the Bankhead plantation in favor of the complainant, and taken his receipt therefor, and he is informed and believes that the said John H. Williams, the trustee, has proceeded in strict and apt compliance with the said trust in him so reposed by the will, to invest the fund so paid, in good, well-secured, interest-paying first mortgage bonds, solvent and in such form as to avoid any litigation, by lending the money to C. M. Neel, of Jefferson county, Arkansas, at eight per cent. per annum, payable semi-annually, and by taking for the purpose of securing the same a first mortgage, in favor of M. L. Bell, as trustee, on Lake Dick plantation, which is worth more than thirty thousand dollars in cash, and that in this payment and said instrument, nothing has been done or suffered to impair the said funds, and that by this the said Bankhead plantation is absolved of said lien, but sure as he is of this, that he is willing, notwithstanding, to let a future decree be made, holding the Bankhead plantation as a guaranty of the correctness of the instrument, and its collection, if it should be finally ascertained by judicial investigation, that the investment was not a judicious one.

To this supplemental answer the plaintiff filed a demurrer, which was sustained. As the defendants did not plead further, a final decree was rendered in favor of plaintiff, declaring that

the bequest of $12,000, with six per cent. interest from December 8, 1882, was a charge on the Bankhead place, and removing John H. Williams from his position as trustee for the plaintiff and appointing another in his place. The defendant, McH. Williams, was directed to pay into court, for the separate use of the plaintiff, within thirty days, six thousand dollars and interest, so much of the $12,000 and interest as was then due, and the remaining installments as they should severally fall due. Reference was made to a master to ascertain the best manner of investing the money, with authority to examine the plaintiff on the subject, separate from her husband. If the master should be of the opinion that the money should be invested in a home for the plaintiff, he was directed to report his opinion as to the best property to be purchased for that purpose, and the state of the title thereto. If the money should not be paid as required, it was ordered that the Bankhead place be sold. It was decreed that such sale should be made subject to the lien of the installments of the twelve thousand dollars not due, and to all other trusts and charges imposed on the place by the terms of the will, which were expressly excluded from the operation of the decree.

John H. Williams and McH. Williams, as executors and in their own rights, have appealed to this court.

1. JURISDIC-
TION: *Lex rei
sitæ.*

The first question presented for consideration is, did the court below have jurisdiction of the subject of this action? Appellants insist it did not.

It is a well settled principle of law, that the law of the *situs* governs exclusively in regard to all rights, interests and titles, in and to immovable property. It governs as to the capacity or incapacity of a testator and the extent of his power to dispose of it, and the descent and heirship thereof, and the manner in which it shall be disposed of for the payment of debts. No court, state or federal, can reach or confer title, or sell, under decree, lands situate in a state in which it does not sit. Every

Williams v. Nichol.

attempt of a court to found jurisdiction over such lands must, from the very nature of the case, be utterly nugatory. In regard to legacies charged upon lands, the courts of equity in the state in which the land lies have exclusive jurisdiction. *Clopton v. Booker, 27 Ark., 482; Story Eq. Jur., sec. 602; Story on Conflict of Laws, secs. 424, 463, 474, 483, 550, 555.* 2. SAME:— As to legacies charged upon land.

In this case the legacy in question was made a charge upon the lands of the deceased in this state, which were devised to McH. Williams. A lien was expressly retained by the will upon these lands as a security for the payment of this legacy. The will directed and made it the duty of McH. Williams, and not the executors, to pay it. By accepting the devise to him of the lands designated in the will as the Bankhead place, McH. Williams became personally bound to pay it. 3. WILLS:— Legacies charged upon.

Mr. Justice Earl, in delivering the opinion of the court in *Brown v. Knapp, 79 N. Y., 143,* said: "It is well settled that when a legacy is given and is directed to be paid by the person to whom real estate is devised, such real estate is charged with the payment of the legacy. And the rule is the same when the legacy is directed to be paid by the executor who is the devisee of real estate. *2 Redf. on Wills, 209; Mensch v. Mensch, 2 Lans., 235; McLachlan v. McLachlan, 9 Paige, 534; Wood v. Wood, 26 Barb., 356; Dodge v. Manning, 1 N. Y., 298; Reynolds v. Reynolds, 16 Id., 257; Gridley v. Gridley, 24 Id., 130; Harris v. Fly, 7 Paige, 421; Olmstead v. Brush, 27 Conn., 530.* If the devisee, in such case, accepts the devise, he becomes personally bound to pay the legacy, and he becomes thus bound even if the land devised to him proves to be less in value than the amount of the legacy. If he desires to escape responsibility he must refuse to accept the devise. If he does accept, he becomes bound to pay the whole amount of the legacy which he is directed to pay. Here, William S. Brown, the executor, was directed to pay this legacy, and he was the devisee of the real estate; and hence the land not only was charged with the

legacy, but the devisee became personally liable to pay it—principal as well as interest.

"The payment of such a legacy can be enforced by a suit in equity against the real estate, or by a common law action directly against the devisee upon the implied promise to pay it—a promise implied by his acceptance of the devise."

McH. Williams accepted the devise to him of the Bankhead place. He offered to bring into court the money due on the twelve thousand dollar legacy, and invoked the protection of the court. As said by Chancellor Kent, in *Glen v. Fisher, 6 John Ch., 34, 36*: He "has no right to require security to refund before payment of the legacy, for he does not pay the legacy in a representative character. The devise was given to him on condition of paying such a legacy to the plaintiff, and if he accepts of the devise, he takes it *cum onere*. This is the case of a devise, creating a charge on *the person* of the devisee, in case of his acceptance of the gift, according to the distinction noticed in the case of *Jackson v. Bull, 10 Johns. Rep., 148*. He did accept the devise, and he became thereby absolutely and personally bound to pay the legacy. He has no right to create any condition precedent to the payment, and the law makes none. He who accepts a benefit under a will, must conform to all its provisions, and renounce every right inconsistent with them. This is an obvious and settled principle in equity. He accepts the devise under the condition of conforming to the will, and a court of equity will compel him to perform the condition, for no man, says Ch. Baron Eyre (*Blake v. Bunberry, 1 Vesey Jr., 523*,) shall be allowed to disappoint a will under which he takes a benefit."

But it is said, that the executors cannot be held to account or settlement, or controlled, by any of the courts of this state, and, therefore, the court below did not have jurisdiction. There was no effort made by the court below to hold the executors to an account and settlement, or to fix the extent of their liability as

such, or to control them in any manner. The decree is wholly confined to the enforcement of the payment of the legacy of twelve thousand dollars and the trust created by the will in connection therewith. This legacy was not made payable by the executors, but by McH. Williams, in his individual capacity. It was not made payable to the executors, but to John H. Williams, as trustee, the trust not being annexed to his office of executor. It was not to be paid out of the Tennessee assets, but it was made a charge on lands in this state. This being true, the fact that John H. and McH. Williams were also executors, could not defeat the jurisdiction of the court. *Clopton v. Booker, supra; Case of Elizabeth Baird, 1 Watts & Serg., 288; Johnson's Appeal, 9 Barr, 421; 1 Perry on Trusts, sec. 281.*

Plaintiff insists that John H. Williams should be removed from his trusteeship under the will, so far as relates to the bequest of twelve thousand dollars, because he has wholly neglected to take any steps toward the execution of the trusts devolved upon him, and that he is insolvent, and has been acting as such trustee without having given bond or other security, and declares that nothing is to be paid to her, but that all money which has or shall come to his hands as trustee under the will is to be held by him for reinvestment, and that he is not authorized to pay to her the interest accruing on the fund set apart in the will for her use and benefit.

4. TRUSTEES: When removable in chancery.

It is well settled that courts of equity have power to remove trustees for neglect or breach of duty. It is not, however, "every mistake or neglect of duty, or inaccuracy of conduct of trustees, which will induce courts of equity to adopt such a course. But the acts or omissions must be such as to endanger the trust property, or to show a want of honesty, or a want of proper capacity to execute the duties, or a want of reasonable fidelity." If a trustee fails in the discharge of his duties from an honest mistake, or a mere misunderstanding of them, or from a misjudgment of them, it is no ground for removal, unless such

failure shows a want of the proper capacity to execute the duties. *2 Story Eq. Jur., sec. 1289; 2 Perry on Trusts, sec. 817; 1 Perry on Trusts, sec. 276; Lathrop v. Smalley's Executors, 8 C. E. Green, 192; Thompson v. Thompson, 2 B. Mon., 175.*

5. SAME: Removal for insolvency.

It is alleged that the trustee, Williams, was insolvent, and had given no bond for the performance of the trust. But there is no allegation that he was more insolvent than he was when he was appointed trustee. The will did not require him to give bond. On the contrary, it expressly provides that he and his co-executor should not be required to give bond as executors. It is evident that his testator did not intend that he should be required to give bond. The testator had a right to appoint him trustee and authorize him to act as such without bond. His wishes should be respected.

The will authorized the trustee, Williams, to collect the twelve thousand dollars as it became payable, and directed him to invest it according to his discretion, for the benefit of plaintiff. A personal confidence was reposed in him by the testator. By the terms of the will, plaintiff, or her husband, was not to have any control over the investment or disposition of the fund. While it was the moral duty of the trustee to consult plaintiff, in order to learn her necessities and ascertain her wishes, he was not required to make any investment, except such as he thought was to her best interest. All she was entitled to was the interest on the money bequeathed for her use, when it was collected. In case he and she thought it best to invest all or any portion of the fund in a home for her, she was to be consulted.

The only neglect of duty in respect to the bequest of twelve thousand dollars, charged in the complaint against the trustee, is the failure for about ten months to collect the first installment thereof and interest. In order to constitute this failure a sufficient cause for removal it must have been such as to endanger the trust property or show a want of honesty or reason-

able fidelity. It does not appear that the trust fund was endangered. For aught that appears it was safely invested when left as a charge on the Bankhead place. The only injury, probably, suffered by plaintiff, was the loss of interest. He might, without intent to do her a wrong, have withheld from her the interest to be collected from McH. Williams as the installments fell due, and insisted that it should be reinvested by him, since the will is susceptible of such a construction without doing violence to its language. We can see in this failure no dishonest, selfish, or improper motive, or any inducement therefor, unless it be a mistake of duty. He accepted the trust. He insists that he had no right to enter upon the execution of it, because the administration of the estate in Tennessee was not closed, and the statutory period for closing it had not expired. This probably accounts for the delay. We do not think he should be removed on this account.

It is insisted that the loan to C. M. Neel is a sufficient ground for removal. Be this as it may, there is nothing to show that such a loan was made by John H. Williams, except the statements contained in the supplemental answer of McH. Williams and the exhibits thereto, and they are not admissible as evidence against and cannot affect John H. Williams. *Ringo v. Woodruff, 43 Ark., 498.*

The trustee should not now be removed, but if he shall, hereafter, neglect the performance of his duties, the denial of this relief should be without prejudice to a future application for his removal.

McH. Williams states in his supplemental answer, that he has paid the legacy of twelve thousand dollars to the trustee, and that the trustee had loaned it to C. M. Neel on good security; and insists that the lands devised to him were thereby released from any liability for the legacy. It appears that this payment and loan were made long after the commencement of this action, and after the court had acquired jurisdiction of the

persons of John H. and McH. Williams. This occurred after McH. Williams had answered and offered to bring into court money to pay so much of the legacy as was then due, and submitted to its jurisdiction. Within ten days thereafter, if his statements are true, he paid the legacy.

The relief sought by this suit was the construction of the will of Willoughby Williams, deceased; the enforcement of the payment of so much of the legacy of twelve thousand dollars as was due; the payment to Mrs. Nichol of the interest due on the legacy; and to secure the safe investment of so much of the principal of the legacy as was due, under the order and direction of the court. This relief was within the jurisdiction of the court. The court, in the exercise of it, had a right to require the instalments and interest due on the legacy to be paid into court, with a view to a safe investment of the principal thereof by the trustee under the control of the court. The court having acquired this jurisdiction, the action of defendants cannot render it powerless to afford the relief clearly within its power and defeat it in the exercise of its jurisdiction. Unless the loan, if any was made, was a safe investment in interest-bearing bonds secured as required by the will, and was made in good faith, on terms advantageous to Mrs. Nichols, it and the payment of the legacy should be wholly disregarded, and the Bankhead place and McH. Williams held liable to the same extent they were before any payment was made. For the purpose of ascertaining whether or not such an investment was made, a reference should be made to a master, with authority to take testimony. If it be ascertained that such an investment was made, it should be permitted to stand, except as to so much thereof as may be interest collected on the legacy. If, on the contrary, it be ascertained that such an investment was not made, the amount due on the legacy should be ordered paid into court within a time specified, and in default of the payment thereof, within the time allowed, the Bankhead place should be sold, under an order of the court, by a com-

missioner appointed for that purpose, subject to the lien thereon for the payment of the installments of the twelve thousand dollars not due, and all other charges imposed on the land by the will; and the proceeds of the sale thereof, or enough to pay the amount due on the legacy, should be paid into court. *The Attorney General v. Clack, 1 Beavan, 468; Cafe v. Bent, 3 Hare, 245.* When the legacy, or any part thereof, is paid into court, if the trustee and Mrs. Nichol shall agree that it will be to her best interest to invest the principal of the legacy, or any part thereof, in a home for her, then it should be so invested by the trustee ; otherwise, it should be invested in first interest-bearing bonds, well secured by mortgage or deed of trust, by the trustee, on terms considered by him most advantageous to Mrs. Nichol; and whatever investment shall be made, it should be in the name of the trustee for the use of Mrs. Nichol, free from all the marital rights, claims and control of her present, or any future husband she may have, and free from all debts or liabilities of either of them, and should be made under the control of the court, it seeing that the trust is faithfully executed and the interests of Mrs. Nichol well protected. The interest due on the legacy should be paid to Mrs. Nichol, and if it has not been paid, or shall not be paid within a specified time, the Bankhead place should be sold to pay it.

The decree of the court below is reversed, and this cause is remanded with instructions to enter a decree according to this opinion and for other proceedings.