## BENJAMIN F. NOURSE *vs.* JANE P. HENSHAW.

Suffolk. March 15.—July 3, 1877. ENDICOTT & SOULE, JJ., absent.

Where money is lent to a married woman, upon an agreement that it shall be applied to the use of her husband or his firm. she is not liable on a note given by her therefor prior to the St. of 1874, c. 184.

Evidence that a firm was composed of the husband of a married woman, to whom money was lent, and of the son-in-law of the lender; that she was in no need of money except to assist her husband, and that the lender had no inducement to lend it except to aid the firm, which was in financial difficulty; that, during the negotiation, the question whether she ought to "sacrifice" her property for her husband's

or the firm's benefit was discussed; that the money was handed to her, and she instantly, without counting it, handed it to her husband, who gave it immediately to his partner; and that the latter at once deposited it to the credit of the firm; will justify a finding that the money was lent upon an agreement that she should apply it to the use of her husband or his firm

MORTON, J. This is an action upon a promissory note, signed by the defendant and her husband, given for money lent by the plaintiff, and which was secured by a mortgage of the real estate of the defendant. The mortgage was foreclosed and the estate sold, and the proceeds applied to the payment of the note. They were insufficient to pay the note in full, and the question in this case is whether the defendant is personally liable for the balance remaining unpaid.

The case was tried by the court without a jury, and the presiding justice found as facts: "1. That it was the purpose and intention of the plaintiff to make the loan upon the credit of the defendant and of her estate; 2. That it was the defendant's purpose and intention, before and when she borrowed the money, to apply it to the benefit of the firm of which her husband was a member; 3. That the plaintiff, when he made the loan, knew that such was her intention, and that such knowledge was one of the inducements which influenced him in the transaction." He also "ruled, as matter of law, that there was no evidence in the case which would justify a finding that the loan was made upon condition that the money should be applied in any particular way, or that would justify a finding that there was an agreement binding on the defendant to furnish it to her husband or to his firm." To this ruling the defendant excepted.

When a case is tried by the court, either party may file exceptions to the decisions and rulings of the court upon matters of law arising upon such trial, "in the same manner and with the same effect as upon trial by jury." Gen. Sts. *c.* 129, § 67.

If the presiding justice had found as a fact that there was no such condition or agreement, such finding might be conclusive upon the defendant, and not open to exception; but, having ruled as matter of law that there was no evidence which would justify such a finding, the defendant has the right of exception, and we must consider the question precisely as if the same ruling had been made in a jury trial.

To avoid misapprehension, it is proper to observe that the note in suit is dated in 1872, so that the St. of 1874, c. 184, which enlarges the capacity of married women to make contracts, does not apply to the case, but it is governed by the Gen. Sts. c. 108.

It has been held, under the Gen. Sts., that a married woman is liable upon a note given by her for money borrowed, or for goods purchased by her, upon her credit and for her sole use. *Wilder* v. *Richie*, 117 Mass. 382. *Allen* v. *Fuller*, 118 Mass. 402. This is upon the ground that, as the money or the goods became her separate property, her promise to pay for them is a contract in reference to her separate property.

But it has also been held that a note or other promise of a married woman, given for the accommodation of, or as surety for, her husband or any third person, cannot be enforced against her. *Willard* v. *Eastham*, 15 Gray, 328. *Athol Machine Co.* v. *Fuller*, 107 Mass. 437. *Heburn* v. *Warner*, 112 Mass. 271. The distinction between the two classes of cases is, that in one the money or property, in reference to which her promise is made, becomes her separate property, held to her sole use and under her sole control, while in the other it does not, by the contract into which she enters, become her separate property. And, in *Wilder* v. *Richie*, it was held that it was immaterial that the lender of the money had reason to believe that the married woman intended to devote it to the benefit of her husband, as it appeared that she received the money to her sole use, with the right to apply it as she saw fit, and the lender had no control over her disposition of it.

In the case at bar, the plaintiff lent the money upon the credit of the defendant and of her estate. At the time she borrowed it, she intended to apply it to the use of her husband or of his firm, and this was known to the plaintiff, and was one of the inducements which influenced him to make the loan. Notwithstanding this, he would be entitled to recover if, by the contract, the money went to her sole use and became her separate property, subject to her control. But if it was one of the terms or conditions of the contract that she should apply the money to the use of her husband's firm, the result would be different. In such case the transaction was, in substance, nothing more than the taking the note of the wife as security for money lent to her

husband's firm. The money never became hers; she could not rightfully apply it as she saw fit, and had no control over its disposition. The placing the money in her hands was a mere form, if she was required by the contract to hand it over to her husband, and the transaction was the same in substance and effect as if the plaintiff had lent the money directly to the husband, and her promise to pay was not a contract, in reference to her separate property, which is binding upon her personally.

It thus appears that the question, whether the loan was made upon a condition or agreement that she should apply the money to the use of her husband or his firm, was a vital one. We must consider, therefore, whether there was any evidence which, in a jury trial, should be submitted to the jury upon the question whether there was such a condition or agreement.

It is true that there was no express, formal agreement that she should apply this money for the use of the firm; but it seems to us that the relations of the parties, the character of the transaction, and all the circumstances which surrounded it, would justify the inference that the real understanding of the parties was that the plaintiff should advance money to relieve the firm in its difficulties, and that the defendant should give her note and mortgage therefor. The firm was composed of the husband of the defendant and his brother, who was a son in law of the plaintiff. The defendant had no need of money except to assist her husband; the plaintiff had no motive or inducement to lend the money except to aid the firm, which was in financial difficulty. It is entirely clear that the sole object of both parties was to aid the firm. During the negotiations, they discussed the question whether the defendant ought to " make this sacrifice," meaning the sacrifice of her property for the benefit of her husband or his firm.

The acts of the parties, when they met at an attorney's office to complete the transaction, tend to show that the loan was made upon the agreement that it should be applied to the benefit of the firm. The defendant signed the mortgage and note, the money was handed to her, and she instantly, without counting it, handed it to her husband, who handed it to his partner in the entry, and the latter at once deposited it to the credit of the firm. Manifestly all the parties interested understood that the

money was to be applied immediately to the use of the firm. It is not an unfair inference, from all this evidence, that there was an agreement between the plaintiff and defendant that the money should be thus applied. It is not necessary to prove an express agreement to this effect; it is enough if there was a mutual understanding that the loan was upon the condition that it was to be applied to the use of the firm.

If the defendant had taken the money and insisted upon using it for other purposes, the argument would have been very strong in favor of the plaintiff, that she had in so doing violated the implied agreement between them. It is not our province to decide, as matter of law, whether this evidence proves such an agreement; this is a question of fact; but we are of opinion that, in a trial before a jury, the evidence should be submitted to the jury, leaving to them to draw such inferences from it as they should think ought to be drawn.

It follows that the ruling of the court, that, as matter of law, the evidence would not justify a finding of an agreement or condition that the money advanced by the plaintiff should be applied to the use of the firm, was erroneous.

*Exceptions sustained.*

*C. A. Welch,* for the defendant.
*E. F. Hodges,* for the plaintiff.