HENRY WINEMAN v. MARY ANN PHILLIPS AND RICH-
ARD G. PHILLIPS.

*Partnership—Husband and wife—Mortgage—Landlord and tenant
—Assignment of lease.*

1. A married woman can secure the payment of the unpaid purchase price of property, the title to which vested in herself and husband jointly, by a mortgage upon her real estate.

2. An agreement by which a husband and wife lease a hotel and purchase the furniture used therein, when executed, makes them joint owners of the leasehold and of the furniture, and does not necessarily involve a partnership between them.

3. An assignee of the lease, and of the interest of the lessees in the furniture, is not a necessary party to a suit to foreclose the mortgage, an inquiry as to the equity existing between the assignee and the lessees not being important in such suit.

4. Where, on the assignment of a lease with the consent of the lessor, no new leasing is made, nor understanding had that the lessees shall be released, nor acts done from which an intention to release them can be inferred, the assignment will not operate to discharge the lessees; citing *Stewart v. Sprague*, 71 Mich. 50.

Appeal from Jackson. (Peck, J.) Argued June 23, 1892. Decided October 4, 1892.

Bill to foreclose a mortgage. Complainant appeals. Decree reversed, and one entered for complainant. The facts are stated in the opinion.

*Griffin & Warner* (*C. E. Warner*, of counsel), for complainant.

*A. E. Hewett* (*Eugene Pringle*, of counsel), for defendants.

McGRATH, J. On the 4th day of January, 1886, defendants leased from complainant the Madison House, at Detroit, for five years and three months, at an annual rental of $2,400 for the first three years, and $2,700 for the rest of the term, payable in monthly installments in advance. Defendants at the same time purchased from complainant the hotel furniture for $1,650, paying $300 down, and agreeing to pay $100 per month after July 1, 1886, until the whole was paid. The lease provided that defendants would pay all water taxes and assessments; keep the plate glass as well as the hotel effects and furniture insured for complainant's use and benefit; and, to secure the performance of the conditions and agreements of the lease on their part, defendants should execute a chattel mortgage upon the effects and furniture purchased, and a real-estate mortgage upon certain real estate owned by defendant Mary Ann Phillips, in Jackson. The lease provided that it should not be assigned without complainant's consent. The agreement provided that, when the furniture should be fully paid for, the real-estate mortgage should be discharged. The lease was executed and acknowledged by complainant and the defendants on the day of its date, and defendants went immediately into possession under it.

The mortgages provided for in the lease were afterwards, on January 20, 1886, executed and delivered. The condition of the real-estate mortgage was the payment of the

balance due upon the furniture, and that of the chattel mortgage was the performance of the conditions of the lease. Defendants occupied the premises until November 15, 1887, at which time they were in arrears for rent, and had made no further payments upon the furniture. On that date defendants, by a written instrument, assigned to Murray Dalziel the lease aforesaid, and defendants' interest in the hotel furniture, subject to all the terms and conditions of the said lease, and subject to all liens and incumbrances existing thereon. Dalziel agreed to pay to defendants $1,000, of which $500 was to be paid down, and $500 in two years, and also assumed and agreed to pay—

"All such rent upon said premises as may be now in arrears, and all liabilities against the said 'Madison House,' so called, created and existing on hotel account, and accruing within the period of one year last past; and the said second party hereto does hereby further assume and agree to carry out and perform all the conditions of said lease entered into on said 4th day of January, 1886, between said second [first] and third parties hereto, and to pay the rent as therein provided, subject, however, to such modifications as may be made in respect thereto by said second and third parties, and all liabilities existing on account of the sale of the furniture as in said lease provided, in accordance with the terms and conditions of said lease, and in all respects relieve the said Richard G. Phillips and Mary Ann Phillips from their obligations in respect thereto."

The said assignment was executed by defendants, Dalziel, and complainant, and contained the following clause:

"And the said Henry Wineman, party of the third part hereto, does hereby assent to the assignment and transfer of said lease by said Phillips and wife to him (said Dalziel), as above provided."

On the same date complainant entered into a written agreement with Dalziel, reducing the rent to $150 per

month. Dalziel occupied till July 1, 1888, at which time he left the city and went to Jackson. It is now claimed that he, at that time, surrendered the house to complainant, and that complainant leased to one Walsh; but the answer sets up that Dalziel, at that time, made some kind of a transfer of the said hotel property, including the said furniture and fixtures, to one Walsh, who took possession and occupied the same for one month and more.

On or about the 1st of August, 1888, Dalziel came back to Detroit, and again took charge of the house, at a reduced rent of $30 per week. Dalziel remained until the last of December, 1888, and then surrendered possession to complainant, who foreclosed the chattel mortgage, and at the foreclosure sale bid in the hotel effects and furniture for $1,000, credited that amount upon arrearages for rent, and filed his bill to foreclose the mortgage upon the Jackson property for the amount unpaid upon the furniture.

The defendants insist:

1. That, by agreement between the parties, they were to be released from liability, and Dalziel was to be substituted, at the time of the assignment to Dalziel.

2. That when Dalziel, August 1, 1888, took possession, it was expressly agreed that the then existing indebtedness should be canceled, and the defendants released from liability, and that at that time Dalziel made a new contract for the purchase of the furniture, at and for the price of $1,000.

The answer does not set up any agreement to release defendants, entered into at the time of the transfer to Dalziel, but sets up that, on July 1, Dalziel made a transfer of the hotel property to Walsh; that Walsh took possession and paid the July rent; that afterwards complainant and Dalziel arranged that the old lease should be canceled, and the hotel property should be surrendered to and become the property of complainant; that, in consideration thereof,

complainant should cancel the old indebtedness; that complainant should oust Walsh, and complainant should make a new lease to Dalziel; that said arrangement was carried out; that Dalziel continued in possession under said lease, as tenant of both hotel and furniture, until December following, when he surrendered the property to complainant, who has since sold it, and leased the premises as his own; that in making said settlement and arrangement of August 1, 1888, defendant Mary Ann Phillips—

"Assumed, in the absence of her husband, to act and agree for them both, and that what she did in the making of said settlement was assented to by her said husband only with and upon the express understanding that the said settlement included the cancellation of the said indebtedness of $1,350 and interest, as well as of the demands growing out of the said lease, and not otherwise."

The first claim is entirely inconsistent with this answer. Dalziel was the son-in-law of defendants, and, although not his answer, it was made after full consultation with him. Mrs. Phillips testified that she was present when the arrangement of August 1, 1888, was entered into between Wineman and Dalziel, and with reference to it she says:

"We were talking about the Walshes, and Mr. Wineman said that the Walshes would never suit his house; he didn't like their character. And I told him, no, I didn't think they would suit him, myself; and he told Mr. Dalziel he would very much like him to take the house back again. Dalziel said he would, provided that I would turn over all the furniture to Wineman, and provided he would release the Phillips' of all the indebtedness and incumbrance; then, if he would do that, he would give Wineman $1,000, and $25 a week rent. Mr. Wineman said he could not take the $25 a week rent, but he would $30, and Mr. Dalziel said that he did not believe he could give him $30, but it appears they consented to it afterwards."

Dalziel says:

"Mrs. Phillips said she wanted that part distinctly

understood, that she, the Phillips,' were released of all
obligations; that was the point that was thoroughly
understood."

If on November 15, 1887, defendants were to be released,
why any further agreement on August 1, 1888?   Com-
plainant denies any agreement to release defendants at any
time, and all of the testimony of defendants and Dalziel,
respecting any agreement to release, relates to conversa-
tions prior to the execution of the tripartite agreement,
dated November 15, 1887.   Two papers were executed at
that time,—the tripartite agreement or assignment to
Dalziel, and the agreement between complainant and
Dalziel, respecting the reduction of the rent.   Neither of
these papers,—and one of them contained the agreement
that, as between defendants and Dalziel, the latter should
pay these arrearages,—refers to any release of the defend-
ants.   It must be held that whatever agreements were
made by these parties were merged, and are set forth in
this tripartite agreement.

Respecting the alleged new agreement of August 1, the
$1,000 which Dalziel and Mrs. Phillips claim was to be
paid to Wineman is not mentioned in the answer.   It is
claimed that, by this agreement, the original agreement or
lease, the chattel mortgage, the real-estate mortgage, the
tripartite agreement, and the subsequent agreement with
Dalziel were all canceled and wiped out, and the defend-
ants were to be released from a valid claim against them
for $2,000; yet there is not a single stroke of a pen to
indicate such an agreement or such a purpose.   Dalziel,
according to his story, was to pay $1,000 to Wineman.
He does not pretend to say when it was to be paid.   If ,
no time was fixed, it was to be a cash payment; yet it was
not paid, and Dalziel occupied the hotel for five months
thereafter, and he does not pretend to say that the matter
of its payment or of its non-payment was ever once alluded

to. Can it be urged that Wineman released a secured claim of over $2,000, sold, turned over, and delivered to Dalziel this entire furniture, for Dalziel's unsecured promise to pay $1,000, without note or memorandum, and that for five months the question of the payment was never alluded to? Wineman does not appear to have done business in that way. The record shows that he was methodical, and, when he made an agreement, he usually put that agreement into writing.

It is claimed, however, that after August 1, 1888, some weekly receipts given by Wineman read, "In full for rent to date," and one of the receipts was produced. Wineman was a man then 70 years old. This receipt was drawn by Dalziel. Wineman's explanation is entirely satisfactory. Dalziel had, on a few occasions, handed over the counter the week's rent, with a receipt already prepared, and this occurred three or four times. Wineman did not read the first two or three of these receipts, but, on glancing over the last before signing, he noticed the language, "In full for rent to date." He immediately remonstrated, and asked to see the other receipts, which Dalziel laid out on the counter or table. Wineman picked out three that had been drawn by Dalziel, insisting that Dalziel knew that was not right, and offering other receipts for them. Dalziel took one of the three, saying that he wanted to retain one of them for a copy. Wineman took the other two without objection or remonstrance from Dalziel. When asked if he did not say that he wanted to keep one for a copy, Dalziel says: "I don't know that I used those exact words. I know I told him that I intended to keep that one." Thus we find Wineman at this early day (September, 1888) insisting that there were arrearages, whereas, if Dalziel's claim is correct, there were no arrearages, yet he does not remonstrate with complainant. It was not claimed that the receipts which Wineman had

prepared were so written, or that he had read and understood those which Dalziel had prepared. Wineman's conduct is everywhere consistent with his theory. Dalziel abandoned the premises December 31, 1888, and on January 4, 1889, notices were posted of the foreclosure sale of the furniture under the chattel mortgage. It was bid in by complainant, and sold again for the same amount.

The bill herein sets forth that, prior to the giving of the mortgage to complainant, Mary Ann Phillips had given a mortgage upon this Jackson property to another party; that in September, 1888, intending to cut off complainant's rights, she procured the said mortgage to be foreclosed, and the property sold, under the statute; that on the day of the sale she gave to her son, George L. Phillips, the amount due on said mortgage, and instructed him to bid in the property in his own name, but in her interest, which he did; that afterwards, in April, 1889, said George L. Phillips conveyed said property to his wife, Mary Phillips, for a nominal consideration; that said Mary Phillips was not a *bona fide* purchaser of said property. The bill makes George L. Phillips and Mary Phillips parties defendant, and prays that the said property may be decreed to be that of Mary Ann Phillips, and subjected to sale as such. The answer admits the allegations of the bill in that regard, except that it is alleged—

"That the sole and only reason why she expected to better her title to her lands by means of a foreclosure sale had reference to claims under tax titles which she supposed were made against her, and not in any way for the purpose or with a view to the defeating of the rights of the said complainant under his mortgage; and she further says that she took such action as is mentioned in the said bill without legal advice, and with no other purpose than to have the said lands conveyed to herself by the said George L. Phillips, after the time for the redemption thereof should have expired."

This explanation is an unsatisfactory one. This proceed-

ing is inconsistent with the theory that on August 1, preceding, this property had been released from complainant's claim against it. The proofs, therefore, fail to show a release or discharge of the mortgage in question.

It is insisted, however, that the mortgage is invalid, for the reason that the original agreement contemplated a partnership, which could not lawfully exist; that the property purchased for partnership uses belonged to the husband. The agreement entered into between complainant and defendants was not a partnership agreement. It was for a lease of certain premises, and the purchase of certain personal property. The consideration that passed was certain personal property, and a lease of certain real property. On the execution of the papers, and delivery of possession, defendants became joint owners of the personal property, and joint owners of the leasehold. The lease and purchase did not necessarily involve a partnership between defendants. A consideration then present and existing passed to her as virtually as though a deed of the premises, instead of a lesser estate, had been executed and delivered. This mortgage was given to secure the unpaid purchase money for property, the title to which vested in herself and husband jointly. A married woman may become a joint debtor with her husband upon a proper consideration. *Post v. Shafer*, 63 Mich. 85.

Dalziel is not a necessary or an indispensable party defendant. An inquiry as to the equity existing between Dalziel and defendants was not important.

The assignment of the lease to Dalziel did not operate to discharge defendants. No new leasing was made; no understanding that defendants should be released; no acts done from which an intention to release could be inferred. *Stewart v. Sprague*, 71 Mich. 50, 57; *Bailey v. Wells*, 8 Wis. 141.

The decree of the court below is reversed, and a decree

entered here for complainant in accordance with the prayer of the bill, with costs of both courts.

LONG, GRANT, and MONTGOMERY, JJ., concurred. MORSE, C. J., did not sit.