## SIDWAY *v.* NICHOL.

### Opinion delivered March 7, 1896.

TRUST—POWER OF BENEFICIARY TO INCUMBER.—Where a legacy, given
in trust to pay the income and profits to a married woman, is in-
vested in land, the title of which is taken in a trustee, the married
woman has no power to mortgage the land.

MARRIED WOMEN—CONTRACTS.—A married woman who has no separ-
ate estate may borrow money and become personally liable there-
for, under Sand. & H. Dig., secs. 4945–4951, providing that a mar-
ried woman may own separate property, and bargain, sell, assign,
and transfer the same, and engage in trade or business on her own
account, and sue or be sued on account of such property or business.

Appeal from Jefferson Chancery Court.

JAMES F. ROBINSON, Chancellor.

#### STATEMENT BY THE COURT.

Suit upon a promissory note, and to foreclose a
mortgage upon real estate executed by Nannie W.

Nichol and her husband, Charles A. Nichol, to secure said note. The complaint alleged that the consideration for the mortgage and note was money loaned to said Nannie W. Nichol. The answer of defendants did not deny that the money was loaned to Mrs. Nichol, but sets up the defense that neither she nor her husband had any interest in the estate that they could convey by mortgage. Both Mrs. Nichol and her husband died before the termination of the suit, and the cause was revived against M. W. Taggart, administrator of the estate of Mrs. Nichol and William, Josiah and Curran Nichol, her children and sole heirs. The court found that the title to the land in question was held in trust by M. W. Taggart for the use and benefit of Nannie W. Nichol, for the uses and purposes described in the will of her father, Willoughby Williams, and that neither she nor her husband nor the said trustee had power to execute the mortgage. The court rendered a judgment against the estate of Mrs. Nichol for the amount of the note and interest, but held that the mortgage was void, and refused to foreclose the same. Both parties appealed.

*Bridges & Wooldridge* and *Rose, Hemingway & Rose* for appellants.

1. Mrs. Nichol took an absolute estate in equity under the will of Willoughby Williams. The terms import an absolute gift, the only limitation being that it should be free from the debts, contracts and liabilities of her husband. 7 Atl. 178; 3 Jarm. Wills, p. 36, and note; 4 Mon. 257. No words of inheritance were necessary. Sand. & H. Dig. sec. 698; 58 Ark. 303.

2. The power of alienation exists, unless denied by the instrument under which the separate estate is held. 11 Vesey, Jr., 209; 2 Perry, Trusts, secs. 655-6, T.; 1 Bish. Mar. Wom. secs. 851-2; *ib.* secs. 865-6-7-8-9; 23

Mo. 457; 3 Gr. Ch. 512; Sand. & H. Dig. sec. 5446. These authorities settle the question that in this state the separate property of a married woman may be aliened unless alienation is expressly forbidden by the instrument under which she holds.

3. But even if Mrs. Nichol, by her individual act, could not mortgage her separate estate, she and her trustee were clearly entitled to do so by their joint deed. Tiedeman on Real Prop. sec. 515; 2 Washb. Real Prop. secs. 519-20; 16 S. W. 459; 3 Kas. 292; 11 S. W. 806.

4. The trust was executed by the purchase of the land, and the legal title vested with the equitable in Mrs. Nichol. Tiedeman, Real Prop. sec. 469; 69 Ga. 331; 78 id. 5; 80 id. 36; 20 Am. St. 909.

5. The bequest was in money, and the right of a married woman to dispose of personal property given to a trustee for her benefit has always been recognized, unless restrained by the instrument creating the trust. But the death of her husband removed all restrictions, and her power to alienate became perfect. 20 Am. St. 909. When her legal and equitable title became perfect, it inured to the benefit of her former grantee. Sand. & H. Dig. sec. 699.

6. The claim was properly allowed against Mrs. Nichol's estate. The money was loaned her, and became her separate property, and for its payment the property was liable.

*N. T. White* and *S. R. Cockrill*, for appellees.

1. Mrs. Nichol has no estate she could mortgage. 47 Ark. 254-268. See also Perry, Trusts, sec. 386a; 59 Vt. 530; 3 Gray, 405; 1 Bish. Mar. Wom. sec. 844; 59 Pa. St. 393; 141 Pa. St. 449, 357; 4 Rich. Eq. 475; 3 Johns. Ch. 68; 29 Ark. 346.

2. But if she had the power to dispose of the land, still the decree is right, for by the deed an equitable life

estate was vested her with remainder to her children. The rule in Shelley's case does not apply. Elph. Int. Deeds, p. 210; 1 Devlin, Deeds, secs. 215, 220; 4 Rich. Eq. 470; 1 Atk. 607.

3. No personal decree could be rendered against Mrs. Nichol or her administrator. She was a married woman, and it was not shown that she was carrying on any separate business, or that she had any separate estate. 29 Ark. 349; 43 *id.* 163; 39 *id.* 357; 56 *id.* 220; 52 *id.* 234-6; 56 *id.* 294; Kelley, Cont. Mar. Wom. p. 188; Sand. & H. Dig. secs. 4947-4952.

RIDDICK, J., (after stating the facts). There are only two questions in this case. The first is, did Mrs. Nichol have power to convey by mortgage the lands involved in this case? We think this question was answered in the negative by the case of *Williams* v. *Nichol*, 47 Ark. 254. The land mortgaged was purchased with the proceeds of a legacy left by the will of Willoughby Williams, deceased, to John H. Williams, to be held in trust and the interest and profits therefrom paid to Mrs. Nichol free from the control of her husband. It was held in *Williams* v. *Nichol, supra,* that Mrs. Nichol was entitled only to the interest on the money bequeathed to her use. The money, under an order of court, was subsequently invested in land, and the land conveyed to a trustee, to be held in trust for the uses and purposes mentioned in the will of Willoughby Williams. The land then took the place of the money, and Mrs. Nichol had only the right to use and dispose of the rents and profits arising therefrom. The chancellor properly held that after the death of Mrs. Nichol the mortgage was of no effect. *Williams* v. *Nichol, supra; Rife* v. *Geyer,* 59 Pa. St. 393; *Wells* v. *McCall,* 64 Pa. St. 207; Perry on Trusts, (4th Ed.), sec. 386*a.*

*Power of beneficiary of trust to incumber it.*

Liability
of married
woman on her
contracts.

The second question is, did the court err in rendering judgment against the estate of Mrs. Nichol for the amount of the note executed by her? The complaint alleged that the consideration for the note was money loaned to Mrs. Nichol. As this allegation was not denied, we must take it as true; and the question presented is whether a married woman, under our law, has the right to borrow money for her own use and benefit, and whether or not she becomes personally liable for the payment of a note executed for such money.

It has been frequently held by this court that a married woman may make a contract for the benefit of *herself* or her separate estate, and that such contract will be enforced against her separate property. *Stowell* v. *Grider*, 48 Ark. 220; *Collins* v. *Underwood*, 33 Ark. 265; *Stillwell* v. *Adams*, 29 Ark. 346. This was the law before the passage of the statutes enabling married women to acquire and hold property in their own right, free from the control of their husbands, and without the aid of a court of equity. The promissory note of a married woman, given for money borrowed by her before the passage of the enabling statutes, would have been enforced in equity against her separate estate. *Dobbin* v. *Hubbard*, 17 Ark. 189; *Miller* v. *Brown*, 47 Mo. 506; *Boatmen's Savings Bank* v. *Collins*, 75 Mo. 281; *Williams* v. *Urmston*, 35 Ohio St. 296, S. C. 35 Am. Rep. 611; *Davis* v. *First Nat. Bank of Cheyenne*, 5 Neb. 242, S. C. 25 Am. Rep. 484; 2 Kent, 151; Lawson, Rights & Rem. sec. 749. Such a contract, before the enabling statutes were passed, created no personal liability against her, for the reason that the separate property of married women before the passage of such laws was altogether a creation of a court of equity.

By the common law she could make no contracts. The contracts of a married woman were void at law,

and were not recognized by courts of law. Inasmuch as her creditors had no means, at law, of compelling the payment of her debts, the courts of equity, which had created her separate estate, took upon themselves to enforce her promises, not as personal liabilities, but by laying hold of her separate property, as the only means by which they could be satisfied. *Owens* v. *Dickenson*, Craig & P. 48, 54; *Pike* v. *Fitzgibbon*, L. R. 17 Ch. D. 454; 3 Pom. Eq. sec. 1122, and cases cited. If the married woman had no separate estate, her creditors were without a remedy, for the proceedings to enforce her promises made in reference to her separate estate were not against her personally, but against her separate estate. It was a peculiar remedy, formulated by courts of equity to enforce promises which at law were void. *Ex parte Jones*, L. R. 12 Ch. D. 484; 3 Pom. Eq. sec. 1122; and note.

While the law stood in this condition, our constitution was adopted, and statutes were enacted providing that property owned by a married woman at the time of her marriage, or acquired afterwards, should be and remain her sole and separate property; allowing her to bargain, sell, assign, and transfer such property, and to engage in trade or business on her own account; providing that no bargain or contract made by her in respect to her sole and separate property, business, or services shall be binding on her husband, or render him or his property in anyway liable therefor, but that she may alone sue or be sued in the courts of this state on account of said separate property, business, or services; and further providing that any judgment against her may be enforced by execution against her sole and separate estate or property to the same extent and in the same manner as if she were sole. Sand. & H. Dig. secs. 4945-4951.

The object and effect of these statutes was to make a radical change in the law as regards the rights and powers of married women. Every married woman of this state who acquired property after the passage of these laws became at once the owner of a separate estate. It is no longer an equitable estate, to be recognized alone by courts of equity; but it is, by virtue of the statute, a legal estate, recognized by courts of law as well as of equity. These laws do not give the wife power to contract generally. Her note given as surety for the debt of another would not bind her, or be enforced against her property. But they do give her power to contract in reference to her services, her separate estate, and in respect to a separate business carried on by her. The statute not only authorizes her to make such contracts, but expressly provides that she may alone sue or be sued in the courts of this state on account of such "property, business, or services." Sand. & H. Dig. sec. 4946. It has been twice held by this court that under this statute the contracts of a married woman in relation to her separate business create a personal liability against her. *Hickey* v. *Thompson*, 52 Ark. 238; *Trieber* v. *Stover*, 30 Ark. 727.

It follows, upon the same reasons, that a contract in reference to her separate property creates also a personal liability; for the statute includes such contracts,— as much so as it does those concerning her separate business. "The right to contract," said Justice Scholfield in *Haight* v. *McVeagh*, "is indispensable to the acquisition of earnings, and to the unrestricted possession, control, and enjoyment of property." *Haight* v. *McVeagh*, 69 Ill. 628; *Hickey* v. *Thompson*, *supra*. The purpose of the statute was to permit married women to acquire and hold property without the intervention of a trustee or a court of equity. In order that she may be free to acquire property, it permits her

to make contracts binding upon herself in regard to such property; and it provides that her husband shall not be liable upon such contracts, but that she alone may be sued thereon. So we think that, if this was a contract in reference to the separate property of Mrs. Nichol, it created a personal liability against her, and the judgment was proper. Imprisonment for debt having been abolished, the only effect of a personal judgment against a married woman is to render her property liable for its satisfaction.

Was this a contract in regard to the separate property of Mrs. Nichol? It is contended that Mrs. Nichol at the time she borrowed this money had no separate estate, and therefore it was not such a contract. If a married woman who owns separate property binds that property to pay for other property which she buys, such property becomes a part of her separate estate. "If she has no separate estate," says Mr. Kelly, in his work on Contracts of Married Women, "there has been considerable conflict on the question whether or not she can purchase on a credit, so as to create a separate estate; yet the true doctrine appears to be that a married woman can purchase on credit, and the purchase will be her separate estate." Kelly, Contracts of Married Women, p. 160. In a Michigan case the defendant, a married woman, was sued for the price of furniture purchased by her. Among other defenses, it was contended that the contract did not concern her separate property, and was therefore not within the statute. In an opinion delivered by Mr. Justice Cooley, he said: "The contract is for the acquisition of sole property; and the title to it, or at least a right in relation to it, vests when the contract is made. There is, therefore, no straining of terms in saying that the contract has relation to her sole property. The statutes on this subject establish a new system. *   *   *

The rule which they establish is one of general capacity
to own property, and to make valid contracts, binding in
law and in equity, in relation to it; and I discover noth-
ing in the statute which so limits that capacity as to
prevent her making the first acquisition, any more than
any subsequent one, on credit." *Tillman* v. *Shackleton*,
15 Mich. 456.    In the case of *Wilder* v. *Ritchie*, 117
Mass. 382, it was held that a married woman may bind
herself by agreements for the acquisition of property to
her separate use, and that no distinction could be made
between money and other personal property. In *Build-
ing & Loan Association* v. *Jones*, 32 S. C. 313, the Su-
preme Court of South Carolina held that, when a mar-
ried woman borrows money, it becomes at once a part of
her separate estate, and that her contract to repay it is
a contract with reference to her separate estate, which'
may be enforced against her.

Our conclusion is that a married woman has, under
our law, the right to purchase personal property, or
borrow money for her separate use, and that the prop-
erty purchased or money borrowed becomes her separate
property.   Her contract to pay for the same is a con-
tract in reference to her separate property, and creates
a personal obligation, valid in law and in equity, and this
without regard to whether she owned any additional
property or not. *Hays* v. *Jordan*, 85 Ga. 741, S. C. 9
Law. Rep. Ann. 373; *Arthur* v. *Caverly*, 98 Mich. 82;
*Russel* v. *Bank*, 29 Mich. 671; *Johnson* v. *Sutherland*,
29 Mich. 579; *Gaynor* v. *Blewett*, 86 Wis. 401; *Haydock
Carriage Co.* v. *Pier*, 74 Wis. 585; *Houghton* v. *Mil-
burn*, 54 Wis. 564; *Conway* v. *Smith*, 13 Wis. 125;
*Haight* v. *McVeagh*, 69 Ill. 625; *Cookson* v. *Toole*,
59 Ill. 515;  *Orr* v. *Bornstein*, 124 Pa. St. 311;
*Hibernia Savings Ins. Co.* v. *Luhn*, 34 S. C. 184.
To hold otherwise would be to say that, although
the statute gives a married woman the right to

acquire and hold property, yet, if she undertakes to acquire it by contract, the law will treat such contract as of no validity.  Under that view of the statutes, a married woman who had no separate estate could make no valid contract for the acquisition of property, however desirable and beneficial the ownership of it might be to her.  If she was a seamstress, and needed a sewing machine, or a music teacher, and needed a piano, she could make no contract for a purchase upon credit.  If she borrowed money with which to purchase property, her note given for the money would be void.  This was her condition before the passage of the enabling acts.  Such a construction, it seems to us, would, to a large extent, nullify the statutes which were intended to emancipate married women from many of the trammels of the common law, and permit them to contract for, acquire, and hold property.

We have not overlooked · the case of *Walker* v. *Jessup*, 43 Ark. 167, and other cases by this court, holding that a married woman cannot make an executory contract for the purchase or conveyance of land binding upon her or her heirs.  There may be reasons why the executory contracts of a married woman in respect to real estate should not be enforced against her.  That question is not before us, and we do not overrule those cases.  But, so far as the former decisions of this court may have intimated that the contracts of a married woman in respect to her separate property, and for its benefit, though valid and binding upon her in equity, create no personal obligation on her part, and can only be enforced by a proceeding in a court of equity against her separate property, the same are overruled.

The decree of the chancellor is affirmed.  Motion for rehearing overruled.