KRIZ, Appellant, vs. PEEGE and wife, Respondents.

*May 8—September 29, 1903.*

(1–8) *Married women: Property rights: Construction of statutes: Contracts: Pledge of credit: Separate property or business: Lease to husband and wife: Liability for rent.* (9, 10) *Statute of frauds: Lease by agent without written authority: Possession by lessee: Ratification.* (11) *Appeal: Reversal of judgment as to costs.*

1. Secs. 2342, 2343, Stats. 1898, removing the common-law disabilities of married women to some extent, are entitled to a liberal construction, carrying out broadly the manifest legislative purpose in enacting the same.

2. Under such statutes a married woman has the same right to acquire property of any kind and in any way, and dispose of,

use, or otherwise enjoy the same, that an unmarried female has.

3. The capacity of a married woman to bind herself to pay an indebtedness incurred for property acquired by her is not dependent upon the purpose to which she intends to devote the property or whether she has a separate property or business. She may pledge her credit for anything of value acquired by her in the transaction as freely as an unmarried woman.

4. Where a married woman pledges her credit for property, whether such property be in the form of money or any other thing of value, the only essential to the validity of her contract at law is that the equivalent for the credit extended shall actually pass to and vest in her, devoid of any obligation incurred in the transaction preventing her from enjoying such equivalent as her separate property.

5. A married woman may, at the time of acquiring property and pledging her credit therefor, purpose devoting the same to the benefit of her husband, and the creditor know of that fact and be induced thereby to extend credit to her, and such circumstances, in the absence of any obligation incurred by her in the transaction to so devote it, will not militate against the legal validity of her obligation to pay as promised.

6. The making of a contract by a married woman concerning her separate property or business under the statutes is one thing. The precedent ownership of property or business or contemplation of a business enterprise is not essential to its validity. The making of a binding contract otherwise is a different matter. The disability of the common law as to the latter has not been removed, therefore it is essential to the making of such a contract that the woman have at the time thereof a separate property and intend in the transaction to charge the same.

7. Cases dealing with contracts of married women, authorized impliedly by the statutes, and those dealing with contracts of such women still governed by the common law, should be carefully distinguished, one class from the other, to the end that those where the rules governing the latter have erroneously been cited as governing the former, may not mislead.

8. By a lease of realty made to a married woman and her husband, though she may intend in the transaction to thereby aid him in obtaining a place in which to do business, she acquires as her separate property an undivided one-half interest in the estate, thereby created, as completely as if she were a *feme sole*, and becomes liable at law for payment of the rent reserved. *Citizens L. & T. Co. v. Witte*, 116 Wis. 60, 92 N. W. 443.

9. In case of a lease of real estate for more than one year, exe-
cuted by an agent of the owner without being duly·authorized
thereto in writing pursuant to sec. 2302, Stats. 1898, the lessee
taking possession of the premises, he thereby becomes the
equitable owner of the estate, in form created thereby, subject
to the terms of the lease, and is legally liable for the rent re-
served, at least so long as he enjoys the property.

10. Where a lease is signed in the manner indicated in the last fore-
going paragraph, the person purporting to have authority as
agent not having such in fact, if the lessee takes possession
and pays rent, the owner receiving the same with knowledge
of the facts, he thereby gives original validity to the trans-
action as creating a property right to a lease good at law in
conformity to the terms of the agreement.

11. A judgment for costs being rendered in form in favor of two
defendants jointly, one being entitled to such judgment and
the other not, on appeal therefrom, there being no disclosure
in the record enabling the court to adjust the rights of the
parties in respect thereto, the entire judgment must be re-
versed and the cause remanded for a proper judgment.

[Syllabus by MARSHALL, J.]

APPEAL from a judgment of the superior court of Milwau-
kee county: ORREN T. WILLIAMS, Judge. *Reversed.*

Action to recover the balance due upon a lease. The cause
was tried by the court.

Facts were found in effect as follows: October 25, 1892,
under a written lease, the relation of landlord and tenant was
in form created between plaintiff and defendants in respect
to certain real estate in the city of Milwaukee. Plaintiff's
son assumed authority to represent him in the matter. The
father was in a sanitarium and the son had charge of his busi-
ness. The term of the lease was five years. Defendants were
husband and wife at the time of· making the same. They be-
came joint lessees and promisors. Plaintiff, subsequent to
the making of the lease, recognized the same as binding upon
him and collected the rent. Defendant *Ernst J. Peege* occu-
pied and enjoyed the premises from about November 1, 1892,
till August 1, 1894. $1,094.99 of rent was paid prior to Au-
gust 1, 1894. The lease was terminated by the acts of the

parties on such date. $1,430.01 of the rent was then unpaid, and no part of it has since been paid. The rent was payable in instalments of $125 on the 1st day of each month in advance. This action was commenced May 29, 1902. More than six years had then elapsed since all the instalments of rent unpaid became due and payable except those due June 1 and July 1, 1894, respectively. Before this action was commenced *Ernst J. Peege* was in due form of law discharged from his debts provable in bankruptcy, including the one in question, by the federal court. *Annie Peege* resided with her husband at the date of the lease and so continued to reside while it was in force. During such time she had no separate property, business, or individual earnings. She was wholly supported by her husband. She signed the lease wholly for the benefit of her husband and to aid him in obtaining a place in which to do business.

On such facts the court decided that plaintiff had no cause of action and dismissed the complaint with costs. Judgment was entered to that effect.

For the appellant there were briefs by *Lenicheck, Fairchild & Boesel,* and oral argument by *F. T. Boesel.*

For the respondents there were briefs by *Van Wyck & Groth,* attorneys, and *Howard Van Wyck,* of counsel, and oral argument by *Howard Van Wyck.*

The following opinion was filed May 29, 1903:

MARSHALL, J. Appellant challenges the finding that *Mrs. Peege* signed the lease to benefit her husband and to aid him to obtain a place in which to do business. We do not deem that material since it appears that she at least obtained an equitable right to an undivided one-half interest in the estate for years by the lease, a valuable property right, which, under the statutes (secs. 2342, 2343, Stats. 1898), she had a right to obtain and agree to pay for regardless of any fact found by the court, as the following will show.

This court, and those of other states having systems similar to ours, have held that a married woman may acquire property of any kind and pledge her credit therefor, binding herself at law, and do so whether she has any separate property or business at the time of such acquirement. Most courts have gone so far as to hold that such right and responsibility are not dependent upon what use she intends to put the property to after acquiring it. *Dayton v. Walsh,* 47 Wis. 113, 2 N. W. 65; *Gallagher v. Mjelde,* 98 Wis. 513, 74 N. W. 340; *Citizens L. & T. Co. v. Witte,* 116 Wis. 60, 92 N. W. 443; *Stack v. Padden,* 111 Wis. 42, 86 N. W. 568; *Schofield v. Jones,* 85 Ga. 816, 11 S. E. 1032; *Wineman v. Phillips,* 93 Mich. 223, 53 N. W. 168; *Tillman v. Shackleton,* 15 Mich. 456; *Ackley v. Westervelt,* 86 N. Y. 448; *Westervelt v. Ackley,* 62 N. Y. 505; *Cookson v. Toole,* 59 Ill. 515; *Orr v. Bornstein,* 124 Pa. St. 311, 16 Atl. 878; *Hibernian S. Inst. v. Luhn,* 34 S. C. 175, 184, 13 S. E. 357; *Building & L. Asso. v. Jones,* 32 S. C. 313, 10 S. E. 1079; *Sidway v. Nichol,* 62 Ark. 146, 34 S. W. 529; *Wilder v. Richie,* 117 Mass. 382; *Nourse v. Henshaw,* 123 Mass. 96.

The reasoning of those cases is well summed up in *Wineman v. Phillips,* to which the learned counsel for appellant refer, substantially thus: The statute conferring upon a married woman the right to take the title to property and enjoy the same as if she were unmarried, and the one conferring the new right to her individual earnings, except for labor performed for her husband, carry with them, necessarily, the right to acquire property with as much freedom from common-law restraints as they do the right to enjoy and dispose of the same. The present chief justice read the same broad meaning out of our statute in the recent case of *Citizens L. & T. Co. v. Witte, supra.* That the emancipation from their common-law disabilities, as regards property, has no restriction requiring a person who deals with one of them specially to inquire whether she has a separate property or

business or whether she intends to devote the property acquired to any such business before extending credit to her, is manifest from the plain ordinary meaning of the statute:

"Any married female may receive by inheritance or by gift, grant, devise or bequest from any person, hold to her sole and separate use, convey and devise real and personal property and any interest or estate therein of any description, including all held in joint tenancy with her husband and the rents, issues and profits thereof in the same manner and with like effect as if she were unmarried." Sec. 2342, Stats. 1898.

Plainly, the right thus granted has no qualifications expressed therein. On the contrary the idea that any qualification was in the legislative mind is strongly negatived by the general scope of the grant. If so, courts should give that effect to the statute. True, as has been said, it is a remedial law and courts should therefore not endeavor to so construe it as to preserve to any extent those common-law disabilities which the legislature plainly intended to remove. The broad, comprehensive, unqualified power includes, by reasonable if not necessary inference, all the rights in regard to the acquirement, enjoyment, and disposal of property which an unmarried woman possesses. The idea that seems still to be read out of the decisions of this court, that the statute means something less than that, that a married woman's right to acquire property is dependent upon the use to which she intends to devote the same, or whether she has a business or separate estate at the time of incurring the indebtedness for property, may not be wholly without warrant, but if so we wish to declare emphatically that such is not the view of the statute entertained here. Unless it can be reasonably said, and of course it cannot, that a married woman cannot bind herself by contract for the acquirement of property except upon condition that she has a separate estate or intends to devote the property to a business already possessed by her, or which she purposes entering into, then, obviously, there are

no such restraints upon the liberty of contract as regards married women. She may acquire property of any kind and pledge her credit therefor, the same as an unmarried female. Her creditor is not obliged, in contracting with her, to inquire to what use she intends to devote the property and part therewith upon the faith of her assurance, or be in danger of loss from her disability to bind herself by contract. The only essential to the validity of her contract obligation is that the property shall pass to her as an equivalent for the credit given. Instantly upon that occurring she becomes the legal owner of the *res* for any and all purposes, and legally liable to pay for the same. She may keep it for her personal use or not use it at all, or devote it to the benefit of others with or without compensation, or change it for other property, or give it away, or do anything else therewith in any of the ways that an unmarried woman may enjoy property. With her new express rights she took the incidental responsibilities that accompany similar rights possessed by others. The idea that she can acquire property or take possession of it and be free from legal responsibility has no support in the language of the statute or in the authorities, that we are aware of. The court of appeals of New York, speaking on the subject, used this language:

"A married woman, although she carries on no business on her own account and has no separate estate, is liable like a *feme sole* for her debts contracted in the purchase or leasing of real estate or other property." *Ackley v. Westervelt,* 86 N. Y. 448.

A brief history of the significant cases heretofore decided by this court will be of assistance hereafter. In *Dayton v. Walsh,* 47 Wis. 113, 2 N. W. 65, it was distinctly held that a married woman may acquire property on credit whether she has a separate estate at the time thereof or not. Yet the argument in support thereof is pointed to as justifying the idea that a married woman must have either property or

business, or prospect of business, as a basis of credit extended to her, or she will not be bound at law. These illustrations were given:

"If she have a separate estate, it would not be claimed that she could not purchase real or personal property, either for cash or on credit, to use in carrying on trade or business, and increase her profits."

"Suppose a married woman is a seamstress, having no estate of her own: may she purchase a sewing machine by means of which she may increase her earnings and make her labor more profitable? Or if she be a music teacher, may she buy a pianoforte upon which she may give music lessons? Does not the law allow her to buy these things on credit, and acquire a separate estate by her earnings? It seems to us it does. It is but another application of the same principle to permit her to lease or buy a house on credit, in which she may keep a private school," etc.

There was no intention, as is plainly indicated, to restrain the meaning of the statutes under discussion so as to minimize their effect in any way. On the contrary, care was taken to point out that they are remedial in character and should have a liberal construction to the end that married women may possess all the rights expressly given to them thereby, and all those which, by reasonable implication, are suggested by such express rights. It will be noted that in all the cases cited in *Dayton v. Walsh,* and all cases decided before the statute of 1872 (Laws of 1872, ch. 155), giving to married women the benefit of their individual earnings other than while working for her husband, where debts contracted by such women were held binding at law, the obligation related to carrying on a business of some sort, or related to a separate estate already possessed. *Conway v. Smith,* 13 Wis. 125; *Todd v. Lee,* 15 Wis. 365; *Leonard v. Rogan,* 20 Wis. 540. In *Krouskop v. Shontz,* 51 Wis. 204, 8 N. W. 241, after a pretty thorough review of most of the previous decisions of the court on the subject, and of those of other states where

statutes similar to ours exist, in an opinion by the present chief justice, this broad doctrine was declared:

"The rights, powers and remedies expressly given to a married woman by the statute, include within them, by necessary implication and as incident thereto, the legal right and power of doing such things, making such contracts and resorting to such remedies as are necessary or convenient to the beneficial enjoyment of the rights, powers and remedies thus expressly given."

No court has gone further than that or stated the letter and spirit of the statute more concisely and clearly. However, the case there in hand was one involving an indebtedness of a married woman contracted in respect to a separate property and business which she possessed, and the scope of the decision has, at times at least, inferentially been restrained to circumstances of that character, though it is apparent that the court then endeavored to plainly display the full scope of the statute, so that no mistake in respect thereto could thereafter reasonably occur.

In *Bouck v. Enos*, 61 Wis. 660, 21 N. W. 825, the liability of a married woman upon a promissory note given by her for money loaned to be used in a business then possessed by her and her husband, she having signed the note with him, was called in question. In the court below the point was made, by a request for an instruction to the jury, that the plaintiff could not recover unless the money borrowed was actually used for the benefit of the defendant's separate estate. The court held that the rejection of the instruction was proper because the lender of the money was not responsible in any way "for the particular application of the money after it was borrowed," and barred from a recovery because the wife used the same for some purpose other than her own. The court was not called upon there to decide whether notice to the lender at the time the money was loaned that the borrower did not intend to use the same for her own benefit, would

militate against her liability. However, the guarded language of the court in deciding the point actually presented might suggest to some the idea that such notice in such a case is a material matter.

In *T. T. Haydock C. Co. v. Pier,* 74 Wis. 582, 43 N. W. 502, in an opinion by Mr. Justice TAYLOR, involving a contract clearly outside of the statutes, it was said of the decisions of the court up to that time, that the effect thereof is that a married woman is still under the disabilities of the common law, "in all transactions which do not relate to her separate estate, her separate trade or business, or to contracts relating to her personal services." That was accurate, yet it admits, reasonably, of being understood this way: That contracts not made with reference to a separate estate or business presently possessed, or at least to a business to be entered upon, are not within the statute. That idea was brought out more fully in *O'Malley v. Ruddy,* 79 Wis. 147, 48 N. W. 116. The indebtedness involved there was incurred by the husband for goods and money furnished to the husband for use in support of his family. A note was given therefor signed by him and his wife. It was not given, it will be seen, for any property acquired by the wife or in respect to the enjoyment of any property or business possessed by her, or which she had in contemplation. It was clearly outside of the statute and the court so decided. However, instead of grounding the decision on the fact that the indebtedness was not based on the right to acquire and enjoy property, the essentials of equitable liability were referred to as the essentials of legal liability under the statute. The right of a married woman to charge her separate estate seems to have been the turning idea. The court, by Mr. Justice LYON, said:

The debt was that of "Austin Ruddy alone and his wife could not bind herself to pay therefor, unless she had a separate estate or business. There is no proof or claim that

she had either.   She was therefore under the common-law dis-ability of coverture, and hence her signature to the note did not create an indebtedness against her.   The cases determined by this court in which it is so held are quite numerous and entirely uniform.   Some of them are cited in the opinion of Mr. Justice CASSODAY in *Krouskop v. Shontz,* 51 Wis. 204 [8 N. W. 241.]   In all the cases in this court cited by coun-sel to maintain the opposite doctrine the wife had a separate estate or business.   It must be held that the mortgage debt was the debt of Austin Ruddy alone."

In reading that case it must be remembered that a mar-ried woman's contract, made with specific intent to charge her separate property, is not governed by the statutes.   A married woman may make such a contract whether it con-cerns her separate property or business or not in the statutory sense, the same now as at the common law, but it is necessary that she shall possess a separate estate in order to do so.   Ob-viously, without such, she cannot make a contract intending to charge her separate estate.   *Mueller v. Wiese,* 95 Wis. 381, 70 N. W. 485.

In *Fuller & Fuller Co. v. McHenry,* 83 Wis. 573, 53 N. W. 896, the question involved was whether husband and wife may do business as partners, and if not, what the legal re-sults are, as regards property rights and responsibilities, in case they do so in form.   In reaching the conclusion the power of a married woman to bind herself at law by contract was discussed, and some of the previous decisions of this court were cited.   It seems that there the distinction between the right of a married woman to charge her separate prop-erty with obligations having no concern with the acquire-ment or disposal of property, or with any separate business interest of hers, and her liberty as to property rights under the statute, was not kept in view.   It was said that the pur-pose of the enabling act removing the disabilities of married women was merely to render contracts 'in regard to their

separate property, which were at common law good only in equity, legal obligations. This language was used:

"Her contracts were void at law and enforceable only in equity against her separate estate. The statute changed the former equitable ownership of her separate estate into a legal one. . . . It has been repeatedly held under this statute that the contracts of a married woman; when necessary or convenient to the proper use and enjoyment of her separate estate, are binding at law, and that all her other contracts and engagements stand, as before the statute, good only in equity, and that the change from an equitable to a legal estate has not, in respect to such other contracts, enlarged her powers. or removed the disability of coverture. The power of a married woman to bind herself at law is a restricted one and limited to the making of such contracts and agreements as are necessary or convenient to the use and enjoyment of her separate estate."

Much further discussion was indulged in, followed by this result:

"The conclusion at which we have arrived is not in conflict with *Krouskop v. Shontz,* 51 Wis. 204 [8 N. W. 241], where the real estate upon which farming was conducted by husband and wife was her sole property, and she was held liable for that reason."

Thus it will be seen that the idea was conveyed, at least in one view, that a married woman can make no contract under the statute that she could not make at the common law, and that since she could not at common law make a contract except in respect to property possessed by her at the time of incurring the obligation, she cannot make a contract now under any different circumstances; that the only change is that, whereas she could formerly bind her separate property only in equity, she can now bind herself at law. The common law did not deal with the contracts of married women made entirely independent of present possession of a separate estate, while the statute gives them the same freedom to acquire

separate estates by their individual contract as it does to unmarried women.

· In *Gallagher v. Mjelde,* 98 Wis. 509, 74 N. W. 340, it was again announced without qualification, by the present chief justice, citing *Dayton v. Walsh,* 47 Wis. 113, 2 N. W. 65, and *Krouskop v. Shontz,* 51 Wis. 204, 8 N. W. 241, that a married woman having no separate estate may acquire one upon the basis of her credit alone. True, nothing was said as to whether the right is restricted by the purpose in view in acquiring the property, but it is plain that the court did not have in mind that there was any such restriction.

In *Hollister v. Bell,* 107 Wis. 198, 83 N. W. 297, again, the words were repeated, "A married woman has not capacity to bind herself at law by contract except as regards her separate property or business," the court having in mind contracts with the purpose of charging separate estate, distinct from contracts made in the acquirement, use, and enjoyment of separate estate. There was no question that the one under consideration did not belong to the latter class. The question was, Did it belong to the former? It was held, following *Mueller v. Wiese,* 95 Wis. 381, 70 N. W. 485, and *Emerson-Talcott Co. v. Knapp,* 90 Wis. 35, 62 N. W. 945, that it did, and was enforceable only in equity to charge the separate estate. It is there also held, inferentially, that had the contract belonged to the second class mentioned, it would have been essential to its being binding that there should have been a separate estate to be charged at the inception of the obligation.

In *Stack v. Padden,* 111 Wis. 42, 86 N. W. 568, the action was at law and the claim was made that the defendant contracted the debt intending to charge her separate property. It was said that such a contract is not within the statute; that to be such the contract of indebtedness must be one concerning separate property, business, or personal services; that en-

joyment of property, so far as regards mere basis for credit,. is not within the statute. Accumulation and use of property, with the incidental right to make all contracts in that regard, are within the statute.

*Citizens L. & T. Co. v. Witte,* 116 Wis. 60, 92 N. W. 443, contains the last expression of the court on the subject under discussion. There the implied powers of a married woman to acquire property upon credit or otherwise was stated very broadly, it being held that such right is not dependent upon possession, when incurring the obligation, of property or business, or a purpose to enter into business; that the validity thereof is to be determined wholly by the nature of the obligation itself as regards whether it is one for the acquirement of property or the enjoyment thereof as an equivalent for the credit. We should say in passing that in writing the opinion in that case the amendment to sec. 2342, R. S. 1878, made in 1895 [Laws of 1895, ch. 86], whereby any conveyance, transfer, or lien, executed by either husband or wife to or in favor of the other, is now valid the same as between other persons, was not quoted or noticed, the contract involved having been made before such amendment.

The trend of the decisions elsewhere will fairly appear from the following statement of the substance of a few of them: A married woman, under her general power to acquire a separate estate, may borrow money and bind herself at law by her note given therefor, regardless of what use she intends devoting the same to which is not known to the lender. *Hibernian S. Inst. v. Luhn,* 34 S. C. 175, 13 S. E. 357. The liability of a married woman on her contract is fixed by its nature, not by what she may do with the proceeds thereof. If it is made to acquire property for herself, she becomes bound thereby at once, regardless of what she may do with the property. *Rigby v. Logan,* 45 S. C. 651, 24 S. E. 56. Where title to property vests in the wife as an equivalent for

her obligation incurred, her statutory right to acquire property is exercised and a legal liability arises. *Tillman v. Shackleton*, 15 Mich. 447. Judge Cooley there remarked, in effect, that the beneficent statute emancipating married women from common-law disabilities should not be strictly construed with a view of minimizing its effect and preserving as much of the old system as possible, which was plainly intended to be done away with, but should have the liberal construction due to a remedial statute. A married woman is bound at law by contract whereby she obtains title to property herself upon her credit, as well as when she contracts indebtedness in any other way concerning property or business. · Her liability becomes fixed by the title to the property passing to and vesting in her, becoming her separate estate. Her undertaking is to pay for her separate property. *Chamber of Commerce v. Goodman*, 110 Mich. 498, 68 N. W. 295. The contract of a married woman, as regards property owned by her or acquired by her in the transaction, is binding upon her at law the same as if she were a *feme sole*. She may borrow money, taking title thereto herself, or acquire any other property upon credit, whether she has a separate estate or not at the time of incurring the obligation, and her promise to pay for the property is binding the same as that of any other person. *Sidway v. Nichol*, 62 Ark. 146, 34 S. W. 529, overruling some previous cases decided by that court. The note of a married woman, given for property acquired by her, is binding upon her at law whether such property be money or some other thing of value, and regardless of what her purpose is at the time of the acquisition, as regards what she intends to do therewith, or whether the creditor has notice that her purpose is to apply the property for the benefit of her husband. *Wilder v. Richie*, 117 Mass. 382. The only essential to the legal obligation of a married woman to pay for property obtained by her on credit is that the agreed

equivalent for the debt shall actually become her property unfettered by any obligation, binding as between her and her creditor, to devote it to any one but herself. She may purpose devoting the property to the benefit of her husband after it becomes hers, and knowledge thereof by the creditor may be an inducement to the extension of credit, and still the legal liability will not be impaired, so long as she incurs no obligation in the transaction inconsistent with an absolute control by her over the property as her own. *Nourse v. Henshaw,* 123 Mass. 96. A married woman, having the right to acquire and enjoy property, and the right to her personal earnings the same as if she were a *feme sole,* has the same right as an unmarried woman to bind herself at law by note, for borrowed money, or anything of value acquired by her as an equivalent therefor. If she has no estate she has a right to acquire one. She may do that, pledging her integrity for the payment thereof, the same as any one else. Such is the plain purpose of the statute removing her common-law disabilities. *Orr v. Bornstein,* 124 Pa. St. 311, 16 Atl. 878.

The conclusion from the foregoing is irresistible that the possession by a married woman of a separate estate or busines, or contemplation by her to engage in business, is not essential to her statutory right to contract, as regards the acquirement of property; that while separate estate is essential to the making of a contract by her merely to charge her separate estate, binding in equity, it is not to make a contract authorized by the statute; that she may incur indebtedness binding upon herself at law, for property vesting in her at the time of the transaction, and that what she may then intend to do therewith, or what she may do therewith in fact, or what information the creditor may have on the subject, so long as he actually parts with, to her, an equivalent for the credit extended, with no restraints upon her as to what she shall do with such equivalent, does not militate against her

liability, the contract being within the plain purposes of the statute.

The point is made by respondents' counsel that appellant is not entitled to recover in any event because the lease was void, being for a term of years, and not signed by appellant or by his agent duly authorized in writing, as required by sec. 2302, Stats. 1898. We are unable to perceive any merit in that proposition. The possession of the property taken under the lease was the possession of the lessees. Appellant ratified the act of his son in making the lease, which made a good contract for a lease, enforceable in equity as from the date thereof, and binding upon appellant at law as regards the rent, so long as the enjoyment of the property actually continued. The cause of action sued upon was for such rent only.

The foregoing covers all the assignments of error and all the reasons assigned why the judgment should be reversed, and also all the reasons advanced by respondents' counsel why the judgment should not be disturbed, except as to *Ernst J. Peege,* which will be presently noticed. Appellant's counsel seem to submit to the decision of the trial court that the statutes of limitations extinguished appellant's claim except as to the instalments of rent due June 1 and July 1, 1894, each being for $125; also that the entire claim was extinguished as to *Ernst J. Peege* by his discharge in bankruptcy. Therefore the complaint should have been dismissed in the court below as to the latter, with costs in his favor, and in the same judgment recovery should have been granted plaintiff against *Mrs. Peege* for $250 with interest on one half thereof from June 1, 1894, and on the other half from July 1, 1894, with costs. A judgment for $46.09 was rendered in form in favor of both respondents generally. We have no way of telling what part thereof belongs to one and what part to the other. The judgment is inseparable, from

any information before us, therefore it is considered that the entire judgment should be reversed and a proper judgment entered.

*By the Court.*—So ordered, judgment for costs in this court to go in appellant's favor for clerk's fees only since he in effect prevails against one respondent and fails as to the other.

A motion by the appellant for a rehearing was denied September 29, 1903.