GOLDSMITH BROTHERS SMELTING & REFINING COMPANY *v.* MOORE.

Opinion delivered May 26, 1913.

1.  MARRIED WOMEN—CONTRACT OF SURETYSHIP—SEPARATE ESTATE.—The personal liability of a married woman on contracts is restricted to contracts made for her own use and benefit or for the use and benefit of her separate estate; and a married woman can not bind herself as surety or guarantor for the debts of her husband or for a third person. (Page 364.)

2.  MARRIED WOMEN—CONTRACT OF SURETYSHIP—SEPARATE ESTATE.— Where a married woman becomes a surety for her husband, her separate estate is not chargable for the performance of her undertaking unless her contract created a lien, on her separate estate, as surety for the payment of the debt. *Held,* when a wife in undertaking to become surety for her husband uses the language: "and pledge my separate estate for the payment of said account," the language is too indefinite and uncertain, and does not create a lien upon her separate estate which equity will enforce. (Page 365.)

3.  MARRIED WOMEN—CONTRACT OF SURETYSHIP—LIEN.—In order for a married woman to bind her separate estate by a contract of suretyship for the debt of her husband, it must appear from the writing that she intended to create a lien, and the particular property to which the lien is to attach, must be clearly described or pointed out. (Page 365.)

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; affirmed.

STATEMENT BY THE COURT.

This was an action instituted in the chancery court by Goldsmith Bros. Smelting & Refining Company against D. L. Moore and Mrs. Duncan L. Moore, his

wife.   The complaint alleges that the plaintiff sold and delivered to the defendant, D. L. Moore, a bill of goods upon the faith of a letter written to it by his wife, which is set out in the complaint.   The letter is as follows:

"Little Rock, Ark., September 8, 1911.
"Goldsmith Bros. Smelting & Refining Company, Heyworth Building, Chicago, Ill.

"Gentlemen:   Mr. D. L. Moore of this city, who is engaged in the dental supply business under the name of D. L. Moore Dental Supply Company, desires to purchase a bill of goods from you, and desires some credit on same.

"The object of this letter is to notify you that I hereby guarantee the payment of any account which you may have against Mr. D. L. Moore or the D. L. Moore Dental Supply Company, and pledge my separate estate for the payment of said account.

"Yours truly,
"Mrs. Duncan L. Moore."

The complaint further alleges that Mrs. Duncan L. Moore was at the time she wrote said letter and is now the owner of a large amount of real and personal property in this State.   That the exact nature, extent, character and location of said property is unknown to the plaintiff.   The prayer is that the debt above mentioned be declared a lien upon the separate property of the defendant, Mrs. Duncan L. Moore, and that so much of it as may be necessary be sold in the satisfaction of said claim.   Mrs. Duncan L. Moore filed a demurrer to the complaint, which was sustained by the court.   The plaintiff has appealed.

*Carmichael, Brooks, Powers & Rector,* for appellant.

1.   Mrs. Moore was liable as a principal, and the contract was such as is authorized by the "married woman's act." 29 Ark. 346; 34 *Id.* 17; 39 *Id.* 238; 62 *Id.* 150; 92 *Id.* 604; Kirby's Digest, § 5207; Const., art. 9, § 7; Kirby's Digest, §§ 5213, 5217; 103 Ark. 246; 78 Ark. 275; 92 *Id.* 604.

2. The obligation is an express charge upon her separate estate in equity. Pom. Eq. § § 1121-1128, note; § 1126, p. 2190; 29 Ark. 346; 47 S. W. 85; 4 *Id.* 386; 24 *Id.* 1128; 46 Mo. 532; 1 Am. Rep. 541; 15 Gray (Mass.), 328; 78 Am. Dec. 216; 18 Am. Rep. 612; 42 N. Y. 613; 12 Am. Rep. 480; 36 N. Y. 600; 37 *Id.* 35; 158 Mass. 94; 59 N. W. 351; 35 Oh. St. 296; 62 Ark. 150; 147 U. S. 118; 3 Minn. 202; 23 *Id.* 337; 17 Ark. 189; 32 *Id.* 445; 33 *Id.* 266; 34 *Id.* 32; 35 *Id.* 480; 45 *Id.* 117; 39 *Id.* 238; 10 *Id.* 516; 98 *Id.* 265; 78 *Id.* 275; 92 *Id.* 604; 40 *Id.* 62; 41 *Id.* 177; 52 *Id.* 126; 102 Ark. 383; 78 Ark. 516; 89 *Id.* 354; 70 *Id.* 5; 154 S. W. 187.

*Horace Chamberlin* and *Wallace Townsend,* for appellee.

A married woman has no power to guarantee her husband's debts. Kirby's Digest, § § 5207, 5214; 34 Ark. 17; 39 *Id.* 238; 2 Perry on Trusts, § § 660, 680; 32 Ark. 445.; 33 *Id.* 266; 62 *Id.* 150; 66 *Id.* 117, 146 S. W. 499; 21 Cyc. 1567, and note; 47 S. W. 85; 86 N. W. 568. The demurrer was. properly sustained.

HART, J., (after stating the facts). There is no direct and explicit averment in the complaint that the contract for the sale of the goods was for the use and benefit of Mrs. Duncan L. Moore or for the use and benefit of her separate property. Moreover, the letter set out in the statement of facts was made a part of the complaint and thus became a part of the record. It was the foundation of the action and will control the general allegations of the complaint. *American Freehold Land Mortgage Co.* v. *McManus,* 68 Ark. 263; *Beavers* v. *Baucum,* 33 Ark. 722; *Buckner & Co.* v. *Davis & Wife,* 29 Ark. 444; 31 Cyc. 85.

It is well settled in this State that a married woman can not bind herself as surety or guarantor for the debts of her husband or for a third person, but her personal liability on contracts is restricted to contracts made for her own use and benefit or for the use and benefit of her separate estate. *Sidway* v. *Nickol,* 62 Ark. 146; *Hardin* v. *Jessie,* (Ark.), 146 S. W. 499, and cases cited; *McCar-*

*thy* v. *Peoples Savings Bank,* 108 Ark. 151; *Sparks* v. *Moore,* 66 Ark. 437.

The contract in question was made for the purchase of certain dental supplies for the husband of Mrs. Duncan L. Moore, and was not made for her use and benefit or for the use and benefit of her separate estate. She became a surety for her husband and her separate estate would not be chargeable for the performance of her undertaking unless her contract created a lien on her separate estate or some portion of it, as surety for the payment of the debt. The words used are "and pledge my separate estate for the payment of said account." The question then is, does the language used create a lien upon her separate estate which a court of equity will enforce as an equitable mortgage? We think the language used is too indefinite and uncertain for that purpose. In such cases the form of the writing or agreement is not important, provided it sufficiently appears that it was thereby intended to create a lien, but the particular property to which the lien is to attach must be clearly described or pointed out. In the case of *Bell* v. *Pelt,* 51 Ark. 433, the court held:

"Where an instrument is intended to secure a debt by fixing a charge on land which it properly describes, equity will give effect to the intention of the parties by enforcing the lien, although the writing is not in the form of the ordinary technical mortgage and contains neither words of grant or defeasance."

Mr. Pomeroy, in discussing the question, said:

"The form or particular nature of the agreement which shall create a lien is not very material, for equity looks at the final intent and purpose rather than at the form; and if the intent appears to give, or to charge, or to pledge property, real or personal, as a security for an obligation, and the property is so described that the principal things intended to be given or charged can be sufficiently identified, the lien follows."

In the instrument sued on no particular property is described and in the application of the principles above

announced, in order to create a lien, in equity, on defendant's separate estate, it is necessary that the writing or agreement should describe or point out the particular property to which the lien is to attach, and, not having done so, it would not create an equitable lien.

The decree will be affirmed.