## CHITTIM v. ARMOUR & COMPANY.

### Opinion delivered October 16, 1916.

MARRIED WOMEN—CONTRACT OF GUARANTY.—Appellant was a married woman and one L. rented from her a store room which she owned. In order for L. to obtain certain articles of merchandise to sell in his store, appellant guaranteed in writing to pay for the same. *Held,* the contract not being for the benefit of appellant's separate estate, that the same was not binding upon her.

Appeal from Pulaski Circuit Court, Third Division; *G. W. Hendricks,* Judge; reversed and dismissed.

#### STATEMENT BY THE COURT.

This appeal comes from judgments rendered against appellant in suits of Armour & Company and Sulzberger & Sons Company against her and Charles Lundy, which were consolidated and heard together below, the Sulzberger Company's having been appealed from a judgment in the municipal court.

The suits were for the balances due on account for merchandise and commodities furnished by said companies to Charles Lundy and upon the written guaranty of appellant as follows:

"For value received, of Armour & Company, the receipt of which is hereby acknowledged, and in further

consideration of said Armour & Company extended to Charles Lundy, of Second and Victory Streets, Little Rock, Ark., a line of credit for such meats, provisions and other of their products as he (they) may from time to time require, the amount and extent of such credit, however, being at all times in the discretion of Armour & Company, and subject to change by them without notice, I hereby guarantee to said Armour & Company the prompt payment at maturity, or at any time thereafter, for any and all purchases heretofore or hereafter made of them by said Charles Lundy, together with interest thereon at the rate of six per cent. per annum after maturity until paid. Also all costs, attorney's fees, and expenses of collection. It is agreed, however, that my liability hereunder is limited to one hundred dollars ($100.00), the said Armour & Company reserving the right to exceed that limit of credit at their own risk. This guaranty is to continue in force until written notice of revocation thereof shall have been given to and received by said Armour & Company at its Chicago office, and is independent of any and all other security which it may now or hereafter have for the payment of any of the purchases or indebtedness herein mentioned. And each of the guarantors hereby waive notice of the acceptance of this guaranty, notice of the maturity of any and all bills purchased hereunder, and notice of default in payments.

"Dated at February 2, 14, this day of 2, 14, 1915.

"KATIE A. CHITTIM (Seal)" ·

"The Sulzberger & Sons Company of America, 324 East Markham Street, Little Rock, Ark.:

"Gentlemen: You will please accept this as my guarantee on the account of Charles Lundy or the Little Rock Meat and Grocery Company, located 120-122 Victory Streets, Little Rock, Ark., to the amount of one hundred fifty dollars ($150.00) weekly.

"(Signed) KATIE A. CHITTIM.

"Witness: Charles Lundy."

In one of the cases it is alleged "that in order to obtain credit for the said Charles Lundy, Mrs. Kate A. Chittim, his landlady, in order to retain him as a tenant,

and thus benefit her separate estate, executed and delivered the written guaranty, etc." The other alleges that the guaranty was made for the benefit of the separate estate of Mrs. Kate A. Chittim.

She answered, denying the allegations of the complaint and setting up her coverture. Lundy admitted his indebtedness and was the principal witness against appellant. He stated that he rented the store owned by her and moved in three rooms in the back part of it and fixed the place up and that business got dull and he told Mrs. Chittim that he could not open up the store, that he was not making enough money, but if she could help him he would do so. He asked her to stand for goods to be purchased by him, saying he would open up the place. He borrowed money from her to pay for the first goods purchased. He got her to sign the guaranty to Armour & Co., set out above, and later another of like kind for $300, and also the one to Sulzberger & Sons Co. He stated the store had been vacant for three or four months before he took it and, "She knew when she made the guaranty that I was going to be a tenant of hers. I told her that I would have to move unless she would help me. She gave me the guaranty. I thought it was helping her."

Appellant stated that the store was a good stand and she had been getting $30.00 a month for it; that it was vacant in January before Lundy occupied it in February; that he insisted after the first month that he was going to keep the store and he ought to have it for $25.00 per month. He talked with her about her having been in the grocery business and wanted her to stand for him for a credit of $100.00 for 30 days. She did not remember signing the guaranty of the S. & S. people and said Lundy asked her to sign several papers that she did not sign, that she had no trouble to rent the house after Lundy left; that she rented it the same day he moved; stated she received no consideration whatever for signing the guaranties and, "It never benefited me one penny—it was not any benefit to my estate. He made no improvement on the building." She accounted for signing the guaranties by saying Lundy was a good talker and prom-

ised that he would pay all the indebtedness and she could lose nothing.

Appellant requested the court to direct a verdict in each case in her favor, but the request was denied and it was submitted to the jury on the question whether the guaranty was executed by appellant to obtain credit for Lundy for the benefit of her estate and the jury answered in each case that it was.

Judgment was rendered against her for the amounts sued for, from which this appeal is prosecuted.

*Miles & Wade*, for appellant.

The court erred in not directing a verdict for defendant. To bind a married woman as surety or guarantor there must be something of special benefit coming to her, or her estate and the burden was on the plaintiff to show this. 108 Ark. 362; *Id.* 151; 103 *Id.* 246; 66 *Id.* 437 and many others. See also 70 Ark. 9. Receiving rent was no special benefit. 145 S. W. 1061; 54 Miss. 485. There was nothing to submit to a jury. 103 Ark. 246; 194 Pa. St. 141.

*Jno. F. Clifford*, for appellees.

The guarantee was executed for the benefit of her separate estate. 70 Ark. 5; 78 *Id.* 517; 62 *Id.* 146; 52 *Id.* 234; 30 *Id.* 727; 89 *Id.* 345; 194 Pa. St. 141.

The evidence was conflicting but the jury found for plaintiff and this court will not disturb the verdict. 92 Ark. 590; 102 *Id.* 203; 103 *Id.* 538; 82 *Id.* 214; 84 *Id.* 406; 90 *Id.* 100; 103 *Id.* 65.

KIRBY, J. (after stating the facts). It is contended by appellant that the trial court erred in refusing to direct a verdict in her favor and we agree with this contention.

It is not claimed that there was any consideration passing between the plaintiffs and appellant, inducing her to execute the guaranties, nor that she received any of the merchandise purchased by Lundy. Being a married woman she could bind herself only on such contracts as she was permitted by law to make.

In *Goldsmith* v. *Moore*, 108 Ark. 362, the court said: "It is well settled in this State that a married woman cannot bind herself as surety or guarantor for the debts of her husband, nor for a third person, but her personal liability on contracts is restricted to contracts made for her own use and benefit or for the use and benefit of her separate estate."

The burden of proof was upon appellee to show that the contract was one that appellant had the power to make and it attempted to discharge this burden by showing that Lundy, for whom the guaranties were made, was a tenant occupying the store house, belonging to appellant, with his statement that she executed the guaranties in order to help him to procure a stock of goods and enable him to open the store and pay the rent he had agreed to therefor. He said the store had been vacant before he rented it and that he would have had to move out and would not have been able to keep it and conduct business there but for the guaranty and that he thought it was for her benefit. The store house it is true, was her separate property, but it is also true that there was no testimony showing the building could not have been rented to anyone else or occupied by another tenant, who would have paid the same rent therefor, and in fact the testimony does show that it was rented to another tenant the very day it was vacated by Lundy. According to appellant's statement, Lundy did not pay rent after occupying the store and procuring the goods on the guaranty. There was no special benefit to her separate property resulting from the contract made, its usable value was in no wise enhanced, nor its physical condition changed. In other words, there is no substantial testimony to support the verdict of the jury, and it cannot be upheld. The judgments are reversed, and the causes as to appellant, dismissed.